CATHERINE FEARON, Appellant, *v.* CHARLES TREANOR, Respondent.

(Argued November 24, 1936; decided December 31, 1936.)

*Joseph S. Robinson* for appellant.

*Robert J. Fitzsimmons* and *Warren H. Mayell* for respondent.

*John J. Bennett, Jr., Attorney-General (Henry Epstein* of counsel), for State of New York.

*Reese D. Alsop et al., amici curiæ.*

HUBBS, J. By chapter 263 of the Laws of 1935 a new article (2-A) was added to the Civil Practice Act, by which civil actions to recover damages for alienation of affections, criminal conversation, seduction and breach of promise to marry are declared to be against public

policy and are abolished, excepting causes of action which were in existence on the effective date of the act.

This action is to recover damages for a breach of promise to marry and seduction occurring after the act became effective. A verdict was directed in favor of defendant by the trial court on the ground that the cause of action had been abolished by the amendment. The judgment has been affirmed by the Appellate Division.

The question presented for determination is whether the act, in so far as it abolishes the cause of action for breach of promise to marry, is constitutional. The allegation of the complaint in which seduction is alleged is not of the gist of the action. Proof under such an allegation relates only to the question of damages. In any event, there can be no doubt that the Legislature had the legal right to abolish a cause of action for seduction brought by a woman seduced against the seducer, as that cause of action did not exist at common law. (*Hamilton* v. *Lomax*, 26 Barb. 615; *Wells* v. *Padgett*, 8 Barb. 323.)

The appellant asserts broadly that the entire act is unconstitutional as it deprives injured parties of a remedy for the enforcement of property rights growing out of contracts which constituted valid causes of action at common law. (N. Y. Const., art. I, §§ 1, 6, 16.)

That contention presents debatable questions which are not free from doubt. We shall not attempt to solve those questions in detail at this time. We place our decision upon the broad ground that the Legislature in dealing with the subject of marriage has plenary power.

In this State marriage is considered a civil contract but of a peculiar character and subject to peculiar principles. (Domestic Relations Law [Cons. Laws, ch. 14], art. 3, § 10.)

" It, certainly, does differ from ordinary common-law contracts, by reason of its subject-matter and of the supervision which the State exercises over the marriage relation, which the contract institutes. In such respects, it is *sui generis*. While the marriage relation, in its legal aspect, has

no peculiar sancity, as a social institution, a due regard for its consequences and for the orderly constitution of society has caused it to be regulated by laws, in its conduct as in its dissolution." (*diLorenzo* v. *diLorenzo*, 174 N. Y 467, 472.)

Marriage is more than a personal relation between a man and woman. It is a status founded on contract and established by law. It constitutes an institution involving the highest interests of society. It is regulated and controlled by law based upon principles of public policy affecting the welfare of the people of the State. " Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the Legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution." (*Maynard* v. *Hill*, 125 U. S. 190, 205.)

There are, in effect, three parties to every marriage, the man, the woman and the State. (*Trammell* v. *Vaughan*, 158 Mo. 214.) Marriage is not a contract within the meaning of the provision of the Federal Constitution which prohibits the impairment by the States of the obligation of contracts. (*Maynard* v. *Hill, supra.*) The Domestic Relations Law provides in great detail when and how marriage may be entered into, how the relation may be dissolved, the grounds for divorce and annulment, the rights and liabilities of husband and wife, the age at which the relation may be entered into and the class of persons who are disqualified from marrying.

From time immemorial the State has exercised the fullest control over the marriage relation, justly believing that happy, successful marriages constitute the fundamen-

tal basis of the general welfare of the people. Our people believe that marriage should be entered into freely as a matter of choice, not through fear, restraint or compulsion. " The marriage state ought not to be lightly entered into. It involves the profoundest interests of human life, transmitting its complex influences direct to posterity, and invading the happiness of parents and near kindred. * * * From such a stand-point, we view the marriage engagement as a period of probation, so to speak, for both parties,— their opportunity for finding one another out; and if that probation results in developing incompatibility of tastes and temperament, coldness, suspicion, and incurable repugnance of one to the other, though all this may impute no vice to either, nor afford matter for judicial demonstration, duty requires that the match be broken off."

The above, taken from an article written by Prof. Schouler, was quoted with approval in *Goddard* v. *Westcott* (82 Mich. 180). That those are words of wisdom few will question.

The statute here involved contains a legislative statement of facts which in the judgment of that body required the enactment of the statute. It is therein stated: " It is hereby declared as the public policy of the state that the best interests of the people of the state will be served by the abolition of such remedies."

Thoughtful people who have given attention to the matter have long realized that the scandals growing out of actions to recover damages for breach of promise to marry constituted a reflection upon the courts and a menace to the marriage institution, and thereby a danger to the State. That does not mean that there may not be specific cases where the maintenance of such an action may be justified. The Legislature, however, in dealing with the subject must have in mind the general welfare. It must determine what is for the best interest of the

 

people of the State as a whole. If the subject is one within its jurisdiction, courts may not pass upon the wisdom of its action and substitute their judgment for that of the law making body. (*Williams* v. *Mayor*, 289 U. S. 36, 42.)

Because experience has demonstrated that the maintenance of actions for breach of promise to marry have resulted in injury to the marriage institution and thereby interfered with the general welfare, the Legislature, in order to correct the evil and remove the cause, had authority to abolish the cause of action. Not all causes of action and rights which existed at common law are beyond legislative control. (*People* v. *Noelke*, 94 N. Y. 137.)

" Legislation which impairs the obligation of a contract or otherwise deprives a person of his property can be sustained only when enacted for the promotion of the general good of the public, the protection of the lives, health, morals, comfort and general welfare of the people and when the means adopted to secure that end are reasonable." (*Matter of People* [*Title & Mortgage Guar. Co.*], 264 N. Y. 69, 84; *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398.)

" In all such cases the question becomes, therefore, one of reasonableness, and of that the Legislature is primarily the judge." (*Antoni* v. *Greenhow*, 107 U. S. 769, 775; *Matter of Stubbe* v. *Adamson*, 220 N. Y. 459.)

" To justify the court, however, in declaring a statute invalid, the conflict between the act and the Constitution must be clear and certain. Every presumption favors the validity of the statute. If there is a reasonable doubt, the act should be upheld." (*Gardner* v. *Ginther*, 232 App. Div. 296, 298; affd., 257 N. Y. 578.)

The Legislature, acting within its authority, has determined as a matter of public policy that marriages should not be entered into because of the threat or danger of an action to recover money damages and the embarrassment and humiliation growing out of such an action.

We are convinced that the Legislature in passing the statute acted within its constitutional power to regulate the marriage relation for the public welfare. Realizing that the statute as a whole presents other constitutional questions, we confine our decision to the facts presented in this case.

The judgment should be affirmed, with costs.

LEHMAN, O'BRIEN, CROUCH, LOUGHRAN and FINCH, JJ., concur; CRANE, Ch. J., concurs in result.

Judgment affirmed.