## O'CONNOR v. JOHNSON.

### Civ. A. No. 3538.

District Court, W. D. New York.

Oct. 28, 1947.

Phillips & Skinner, of Jamestown, N. Y., for plaintiff.

Lombardo & Pickard, of Jamestown, N. Y., for defendant.

KNIGHT, District Judge.

Plaintiff, a resident of North Carolina, sues defendant, a resident of New York, for $165,000 for breach of promise of marriage, alleging in .her complaint that the promise was made and accepted in Southern Pines, North Carolina, on or about March 30, 1945; that it was agreed that the marriage ceremony would be solemnized on September 17, 1946; that plaintiff on numerous occasions requested him to fulfill his promise but he made excuses and requested postponements; that, in January, 1947, he requested postponement for another year, to which she refused to agree; "that (she) then insisted that (he) carry out his agreement but that (he) since that time has failed and refused to carry out his promise to marry the plaintiff although plaintiff at all times has been ready and willing to carry out the agreement on her part."

Plaintiff further alleges, upon information and belief, that "the laws of North Carolina provide that a valid contract of marriage exists where there is an offer of marriage and an acceptance having mutuality * * *; that where no definite time or place is fixed or agreed upon, the contract will be construed as providing for the marriage within a reasonable time as determined by the circumstances of the particular case * * *; that a refusal to perform a marriage without sufficient excuse constitutes a breach thereof for which the person causing such breach is liable to the other in damages."

Defendant moves to dismiss the complaint on the grounds (1) that it "fails to state a claim upon which relief can be granted", (2) that it "fails to state facts sufficient to constitute a cause of action, and is insufficient in law upon the face thereof."

Plaintiff's counsel urge in their brief "that the only question for decision upon this motion is whether Article 2-A of the New York Civil Practice Act should be held to prevent the plaintiff from obtaining relief in this Federal Court, sitting in New York, upon a transitory cause of action admittedly arising in North Carolina, where the plaintiff resides, based upon a grievous wrong done her by reason of plaintiff's breach of his contract of marriage."

Article 2-A of the New York Civil Practice' Act provides:

"Sec. 61-a. *Declaration of public policy of state.* The remedies heretofore provided by law for the enforcement of actions based upon alleged alienation of affections, criminal conversation, seduction and breach of contract to marry, having been subjected to grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damage to many persons wholly innocent and free of any wrongdoing, who were merely the victims of circumstances, and such remedies having been exercised by unscrupulous persons for their unjust enrichment, and such remedies having furnished vehicles for the commission or attempted commission of crime and in many cases having resulted in the perpetration of frauds, it is hereby declared as the public policy of the state that the best interests of the people of the state will be served by the abolition of such remedies. Consequently, in the public interest, the necessity for the enactment of this article is hereby declared as a matter of legislative determination."

"Sec. 61-b. *Certain causes of action hereafter accruing abolished.* The rights of action heretofore existing to recover sums of money as damage for the alienation of affections, criminal conversation, seduction, or breach of contract to marry are hereby abolished."

This latter section became effective March 29, 1935.

The Court of Appeals of New York in Fearon v. Treanor, 272 N.Y. 268, at page 275, 5 N.E.2d 815, 817, 109 A.L.R. 1229, held: "We are convinced that the Legislature, in passing the statute, acted within

its constitutional power to regulate the marriage relation for the public welfare." On a motion to amend the remittitur, the court said (273 N.Y. 645, 8 N.E.2d 36) that the remittitur will be amended by adding, "This Court held that the law aforesaid is not repugnant to the Constitution of the United States." On appeal to the U. S. Supreme Court, the latter decided: "Per Curiam. The appeal herein is dismissed for the want of a substantial federal question." 301 U.S. 667, 57 S.Ct. 933, 81 L.Ed. 1332. A rehearing was denied, 302 U.S. 774, 58 S.Ct. 6, 82 L.Ed. 600.

The provisions of the act relating to alienation of affections and criminal conversation were also held constitutional in Hanfgarn v. Mark, 274 N.Y. 22, 8 N.E.2d 47. An appeal to the U. S. Supreme Court was unanimously dismissed "for the want of a substantial federal question." 302 U.S. 641, 58 S.Ct. 57, 82 L.Ed. 498. Among the cases which it cites is Silver v. Silver, 280 U.S. 117, at page 122, 50 S.Ct. 57, 58, 74 L.Ed. 221, 65 A.L.R. 939, where it had said: "We need not, therefore, elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object."

Plaintiff's counsel urge that the prohibition in Article 2-A of the N. Y. Civil Practice Act does not apply to her because the promise of marriage was made and breached outside of the state. They find a limitation of the statute in Sec. 61-d, which reads: "Sec. 61-d. *Legal effect of certain acts hereafter occurring.* No act hereafter done within this state shall operate to give rise, either within or without this state, to any of the rights of action abolished by this article. No contract to marry, hereafter made or entered into in this state shall operate to give rise, either within or without this state, to any cause or right of action for the breach thereof."

That this section does not limit the general prohibition contained in Section 61-b is evident from the provisions of Sections 61-e and 61-g.

Section 61-e provides: "It shall hereafter be unlawful for any person, either

as party or attorney, or an agent or other person in behalf of either, to file or serve, cause to be filed or served or threaten to file or serve, or to threaten to cause to be filed or served, any process or pleading, in any court of the state, setting forth or seeking to recover a sum of money upon any cause of action abolished or barred by this article, whether such cause of action arose within or without the state."

Section 61-g provides: "Any person who shall violate any of the provisions of this article shall be guilty of a felony which shall be punishable by a fine of not less than one thousand dollars nor more than five thousand dollars, or by imprisonment for a term of not less than one year nor more than five years, or by both such fine and imprisonment, in the discretion of the court."

"The rule of construction prescribes, that statutes imposing penalties, in case they are disobeyed, shall be held to be mandatory, and that courts shall not then consider the circumstances of a case, or its hardship or inconvenience." Bradley v. Buffalo, N. Y. & Erie R. Co., 34 N.Y. 427, 431.

Section 61-h further declares: "This article shall be liberally construed to effectuate the objects and purposes thereof and the public policy of the state as hereby declared."

■■■ This District Court was created and established by Congress pursuant to the authority vested in it by the Constitution. Its jurisdiction cannot be limited by any act of the New York Legislature. Said Article 2-A does not attempt so to do.

Plaintiff's counsel assert in their brief: "The only case clearly in point, involving an action under this statute, brought in a Federal District Court in New York, is Wawrzin v. Rosenberg, D.C.E.D.N.Y.1935, 12 F.Supp. 548." In that case a New Jersey resident sued a New York resident for alienation of his wife's affections. The court denied a motion to dismiss the complaint. The case was decided October 22, 1935, several months after said Article 2-A became effective. The court said: "If, therefore, the law of New York were applicable to the pending case, under the authority of Bucher v. Cheshire R. Co. [125 U.S. 555, 8 S.Ct. 974, 31 L.Ed. 795], it would seem that the complaint herein would have to be dismissed; but it does not appear from the complaint that the wrong or injury was committed in the state of New York. In consequence the law of the state does not necessarily apply. If at the trial the proof shows that the wrongful acts of the defendant were committed within the state of New Jersey, then the New York statute obviously would not be a bar because the plaintiff's right is transitory, governed by the law of the place and not of the forum." 12 F. Supp. at page 549.

On the other hand, in Fahy v. Lloyd, D. C.D.Mass., 57 F.Supp. 156, decided in 1944, it was held that public policy, declared by Massachusetts statute, to prohibit actions for breaches of contract to marry, extends to rights acquired outside that state and that the conflict of laws rule applicable in Federal District Court is that prevailing in courts of state wherein federal court sits. The court, in granting defendant's motion to dismiss the action, said: "The following facts appear from the pleadings: The defendant in Massachusetts telephoned to the plaintiff, who was in Nassau, Bahama Islands, and asked the plaintiff to marry him. She over the phone accepted this proposal and agreed to marry him. Subsequently the defendant in Boston phoned to the plaintiff, who at that time was in Connecticut, and in the course of the conversation over the phone expressed his intention not to live up to his contractual promise." 57 F.Supp. at page 156.

After quoting the Massachusetts statute which provided: "Breach of contract to marry, shall not constitute an injury or wrong recognized by law, and no action, suit or proceeding shall be maintained therefor," G.L.(Ter.Ed.) c. 207, § 47A, as added by St.1938, c. 350, the court proceeds to say: "This plaintiff urges that the above limitation of action is not applicable to this case because the contract to marry was not made in Massachusetts, nor did the breach occur in this Commonwealth, and that on the authority of Wawrzin v. Rosenberg, D.C., 12 F.Supp. 548, 550, 'one

who elects to assert his equitable or common-law rights in a federal court cannot be deprived of them by the statutes of the state in which the federal court happens to exercise jurisdiction at the time.' That case was decided in 1935 and would be a strong guide here if it were not for the decisions of the United States Supreme Court in Klaxon Co. v. Stentor [Electric Mfg.] Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 and Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462 and the interim decision of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. The Erie case, supra, laid down the rule that the Federal Court was bound by the substantive law of the State in which it was sitting. The other cases lay down the rule that the Federal Courts are bound by the conflict of laws rule of the State in which the Federal Court is sitting. While there are no decisions of the Supreme Judicial Court of Massachusetts to the effect that the declared public policy on breach of promise to marry cases extends to rights that might have been acquired without the State, I nevertheless think that the wording of the statute would lead to this conclusion. This Court should not be the first to declare that such is not the rule of law." 57 F.Supp. at page 156.

▮ This court likewise, in the absence of any decision of the New York Court of Appeals to the contrary, refuses to hold that said section 2-A does not apply to a case where the promise of marriage and its breach occurred outside of this state. If the instant action is not maintainable in the state court, is it maintainable in this district court? If it is, it must be on the ground of diversity of citizenship, 28 U.S.C.A. § 41. This indispensable fact is nowhere alleged in the complaint. It is merely alleged that plaintiff is a resident of North Carolina and that defendant is a resident of Jamestown, New York. These allegations are insufficient to confer jurisdiction on this court.

"Diversity of citizenship as a basis for the jurisdiction of a cause in the District Court of the United States is not dependent upon the residence of any of the parties, but upon their citizenship. 28 U.S.C. A. § 41, Subdivision (1), Judicial Code, § 24, amended. Bouvier (Baldwin's Students Ed. 1934) says, 'Citizen and resident (q. v.) are not synonymous, and in some cases the distinction is important.' It might well be that a resident of any one state in point of fact may be a citizen of that or any other state." Jeffcott v. Donovan, 9 Cir., 135 F.2d 213, 214. See also Townsend v. Bucyrus-Erie Co., 10 Cir., 144 F.2d 106, 108, 109.

Plaintiff alleges that defendant "owns property in the state of New York and Florida, and that he spends a considerable portion of each year in summer and winter resorts in New York, Virginia, North Carolina, South Carolina and Florida."

Since, however, if diversity of citizenship exists in this case, the defective allegations may be cured by amendment, I shall now consider the question whether, assuming that this court has jurisdiction of the parties, the action is maintainable.

In Hanfgarn v. Mark, 274 N.Y. 22, 25, 8 N.E.2d 47, supra, it is said:

"An action 'to recover damages for breach of promise to marry is based upon an agreement preliminary to marriage and an action to recover damages for alienation of affections and criminal conversation is founded upon the marriage relation itself. Each has to do with the marriage status and each is subject to regulation and control by the state.

"It has been expressly decided by the United States Supreme Court that marriage is not a contract within the meaning of the Federal Constitution which prohibits the states from impairing the obligation of contracts. U.S.Const. art. 1, sec. 10; Maynard v. Hill, 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654.

"Marriage has been frequently referred to as a contract in judicial opinions, by text-writers, and in statutes. Nevertheless, it is not a common-law contract as generally understood. It has some of the attributes of such a contract, but contains many elements foreign to a common-law contract. * * * The relation entered into by the parties is regulated by the state. * * *

"Not being a common-law contract, the relation may be regulated, controlled, and modified and rights growing out of the relationship may be modified or abolished by the Legislature without violating the provisions of the Federal or State Constitution which forbid the taking of life, liberty, or property without due process of law. N.Y.Const. art. 1, § 6; U.S.Const. Fourteenth Amendment."

■ It is the emphatic public policy of New York to prohibit actions in its courts to recover damages for breach of promise to marry. An attempt or even threat to commence such an action is punishable as a felony. In the Fearon case, supra, 272 N.Y. at page 273, 5 N.E.2d at page 817, 109 A.L.R. 1229, it is said: "Thoughtful people who have given attention to the matter have long realized that the scandals growing out of actions to recover damages for breach of promise to marry constituted a reflection upon the courts and a menace to the marriage institution, and thereby a danger to the state." This matter was fully discussed in the opinion of the lower court. 248 App.Div. 225, 288 N.Y.S. 368.

Bond v. Hume, 243 U.S. 15, 37 S.Ct. 366, 61 L.Ed. 565, was a case where plaintiff sued in a District Court of Texas upon a contract executed in New York. The Supreme Court gave instructions to the court below about a certain certificate and, in its opinion, said that "the question is not whether the contract was valid, but whether, being valid under the law of New York, it was susceptible, consistently with the laws of Texas, of enforcement in the courts of the United States, sitting in that state. And this question involves the inquiry, Was there any local public policy in the state of Texas which, consistently with the duty of the courts of that state under the Constitution to give effect to a contract validly made in another state, was sufficient to warrant a refusal by the courts of that state to discharge such duty?

"A statement of a few elementary doctrines is essential to a consideration of this issue. Treating the two states as sovereign and foreign to each other—New York, under whose laws the contract was made and where it was valid, and Texas, in whose courts we are assuming it was

sought to be enforced—it is elementary that the right to enforce a foreign contract in another foreign country could alone rest upon the general principles of comity. But elementary as is the rule of comity, it is equally rudimentary that an independent State under that principle will not lend the aid of its courts to enforce a contract founded upon a foreign law where to do so would be repugnant to good morals, would lead to disturbance and disorganization of the local municipal law, or, in other words, violate the public policy of the State where the enforcement of the foreign contract is sought." 243 U.S. at page 21, 37 S.Ct. at page 368, 61 L.Ed. 565.

This rule has been approved in later decisions of the U. S. Supreme Court.

In Bothwell v. Buckbee, Mears Co., 275 U.S. 274, 278, 48 S.Ct. 124, 126, 72 L.Ed. 277, it is said: "Under rules of law generally applicable a state may refuse to enforce a contract which provides for doing within it an act prohibited by its laws."

"Thus, a plaintiff suing in New Hampshire on a statutory cause of action arising in Vermont might be denied relief * * * because the enforcement of the right conferred would be obnoxious to the public policy of the forum." Bradford Electric Light Co. v. Clapper, 286 U.S. 145, 160, 52 S.Ct. 571, 576, 76 L.Ed. 1026, 82 A.L.R. 696.

In Milwaukee County v. M. E. White Co., 296 U.S. 268, 272, 273, 56 S.Ct. 229, 232, 80 L.Ed. 220, it is said: "Where suits to enforce the laws of one state are entertained in the courts of another on the principle of comity, the federal district courts sitting in that state may entertain them and should if they do not infringe federal law or policy."

■ There is no separate federal law or policy governing marriages. "As between the federal and state governments the power to control and regulate marriages is retained by the latter, and is not vested in congress except in the District of Columbia and in the territories of the United States." 38 Corpus Juris, pp. 1275, 1276; Great Northern R. Co. v. Johnson, 8 Cir., 254 F. 683. Actions for breach of promise of marriage are governed by state law.

Is this court bound to apply the law of North Carolina, which presumably permits such an action, or the law of New York, which emphatically prohibits such an action in its courts?

In dismissing the breach of promise complaint in Fahy v. Lloyd, D.C., 57 F. Supp. 156, supra, the court relied on the three following decisions, which will now be considered.

In Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, a citizen of Pennsylvania was injured by defendant's train in that state but sued defendant in a District Court of New York. The Pennsylvania law gave him no cause of action and defendant insisted that it should be applied.

"The trial judge refused to rule that the applicable law precluded recovery. The jury brought in a verdict of $30,000; and the judgment entered thereon was affirmed by the Circuit Court of Appeals, which held, (2 Cir., 90 F.2d 603, 604), that it was unnecessary to consider whether the law of Pennsylvania was as contended, because the question was one not of local, but of general, law, and that 'upon questions of general law the federal courts are free, in absence of a local statute, to exercise their independent judgment as to what the law is; and it is well settled that the question of the responsibility of a railroad for injuries caused by its servants is one of general law.'" 304 U.S. at page 70, 58 S. Ct. at page 818, 82 L.Ed. 1188, 114 A.L.R. 1487.

The Supreme Court overruled Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, and reversed the lower court. Brandeis, J., delivering the opinion of the court, said: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a State whether they be local in their nature or 'general,' be they commercial law

or a part of the law of torts." 304 U.S. at page 78, 58 S.Ct. at page 822, 82 L.Ed. 1188, 114 A.L.R. 1487.

The effect of this decision is stated in Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, where it is said: "We are of opinion that the prohibition declared in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487, against such independent determinations by the federal courts, extends to the field of conflict of laws. The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts. Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side. See Erie R. Co. v. Tompkins, supra, 304 U.S. at 74–77, 58 S.Ct. at 820–822, 82 L.Ed. 1188, 114 A.L.R. 1487." 313 U.S. at page 496, 61 S.Ct. at page 1021, 85 L.Ed. 1477.

The Klaxon case was an action for breach of a contract made in New York. It was urged by petitioner that the Delaware state courts would refuse to apply Sec. 480 of the New York Civil Practice Act, while the contrary was maintained by respondent. The Supreme Court said: "We make no analysis of these Delaware decisions, but leave this for the Circuit Court of Appeals when the case is remanded. * * * The full faith and credit clause does not go so far as to compel Delaware to apply section 480 if such application would interfere with its local policy." 313 U.S. at page 498, 61 S.Ct. at page 1022, 85 L.Ed. 1477.

In the following case of Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L. Ed. 1481, 134 A.L.R. 1462, it is said: "For the reasons given in Klaxon Company v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, we are of the view that the federal courts in diversity of citizenship cases are governed by the conflict of laws rules of the courts of the states in which they sit. In deciding that the changes made in the insurance contract left its governing law unaffected and that the laws of Texas could not be

applied to a foreign contract in Texas courts, the federal courts were applying rules of law in a way which may or may not have been consistent with Texas decisions. Likewise it is for Texas to say whether its public policy permits a beneficiary of an insurance policy on the life of a Texas citizen to recover where no insurable interest in the decedent exists in the beneficiary. The opinion does not rest its conclusions upon its appraisal of Texas law or Texas decisions but upon decisions of this Court inapplicable to this situation in the light of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Ruhlin v. New York Life Insurance Co., 304 U.S. 202, 205, 58 S.Ct. 860, 861, 82 L.Ed. 1290. The statement in the opinion 'that it is immaterial, in so far as the decision of this case is concerned, whether the law of Texas or the law of New York be applied' we understand, from a reading of the whole opinion, to mean that while an insurable interest is required in Texas and not in New York, the lack of insurable interest is immaterial in this case even in Texas because 'the insurer acknowledged liability and paid the money into court. This being so, not only does the objection of wagers disappear, but also the claimed principle of public policy.' But this is something to be decided according to Texas decisions to none of which the opinion refers. * * * The decision must be reversed and remanded to the Circuit Court of Appeals for determination of the law of Texas as applied to the circumstances of this case." 313 U.S. at pages 503, 504, 61 S.Ct. at page 1025, 85 L.Ed. 1481, 134 A.L.R. 1462.

After remand, the Circuit Court declared: "The public policy of Texas, as announced by its highest court, is binding upon us." 5 Cir., 123 F.2d 550, at page 551.

■ There are cases where the federal court must apply the law of a state other than that of the state where it is sitting. Thus in Williams v. Green Bay & W. R. Co., 326 U.S. 549, 553, 66 S.Ct. 284, 286, 90 L.Ed. 311, it is said: "Under the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, a federal court in a diversity case applies local law. In conflict of laws cases that may mean ascertaining and applying the law of a State other than that in which the federal court is located." That does not mean that the court must apply foreign law when such application is opposed to the public policy of the state forum.

The Court of Appeals of New York has refused to enforce a statute of a sister state where it conflicted with local public policy. In Herzog v. Stone, 264 N.Y. 379, 191 N.E. 23, it refused to recognize a Virginia statute which gave a cause of action against the representatives of the estate of a tort-feasor. The court said that "comity depends upon the public policy of the State, and the Legislature has declared the public policy of this State when it provided that no action for personal injuries may be maintained against the executors or administrators of a decedent who resided in this State." 264 N.Y. at page 384, 191 N.E. at page 25.

Plaintiff's counsel cite the case of Daily v. Parker, D.C., 61 F.Supp. 701, an action by a woman citizen of Pennsylvania against a woman citizen of Illinois to recover damages for alienation of affections and criminal conversation. The Illinois district judge refused to dismiss the complaint. He said: "In 1935 * * * the Indiana legislature passed a law *abolishing* the right of action for alienation of affections, criminal conversation and breach of promise to marry, as did also New York and Pennsylvania. The Illinois law, however, together with the laws of some eight or nine other states, only made it *unlawful to file the actions.* Defendant insists that the Illinois Legislature by this Act intended to, and did in effect abolish suits for alienation of affection, breach of contract to marry and criminal conversation, and that Sections 1 and 2 thereof, which are the only sections now in force, are in reality a declaration of public policy, and amount to a legislative recognition of the blackmailing propensities of persons bringing this type of cases. I cannot believe that the Illinois Legislature intended to enact a law which would result in the protection of persons guilty of alienating the affections of a husband or a wife, declaring the same to be a public policy in the interest of the public welfare, and at the same time

878

make it unlawful for an aggrieved husband or wife to seek any redress for such injury, when the Constitution clearly provides that every person who is wronged or injured has a right to pursue his remedy." 61 F. Supp. at pages 702, 703.

As to the Illinois Constitution, Smith-Hurd Stats, he says: "Section 19 of Article II * * * provides that: 'Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation * * *.'" 61 F.Supp. at page 703.

The New York Constitution, however, contains no such provision and Article 2-A of the N.Y.Civil Practice Act has been declared constitutional by its highest court (Fearon v. Treanor, 272 N.Y. 268, 5 N.E. 2d 815, 109 A.L.R. 1229, supra; Hanfgarn v. Mark, 274 N.Y. 22, 8 N.E.2d 47, supra) and the U. S. Supreme Court in both cases dismissed the appeal.

The New York Legislature has clearly and emphatically expressed its public policy against the maintenance of such an action as this, whether the cause of action arose within or without the state. While the Act cannot limit the jurisdiction of this court, the latter, under the U. S. Supreme Court decisions above cited, is bound to apply the New York law.

Defendant's motion to dismiss the complaint is granted, with costs, and the complaint is hereby dismissed.