OPINION OF THE COURT
Dennis K. McDermott, J.
The question presented in this case is whether these parties were engaged in an “intimate relationship” and, if so, whether *665 the petitioner is entitled to seek relief under the provisions of article 8 of the Family Court Act.
The petitioner is a married woman who, in her duly verified petition, alleges that the respondent and she were “boyfriend/ girlfriend” engaged in an intimate relationship and that in the few days immediately prior to the filing of her petition the respondent had, among other things, struck her and threatened to shoot both her and her husband. She comes to this court seeking an order of protection.
Family Court Act § 812 (1) provides that the court’s jurisdiction in a family offense proceeding is limited to “members of the same family or household.” Recently, the Legislature expanded the definition of persons deemed to be members of the same family or household to include “persons who are not related by consanguinity or affinity [i.e., by blood or marriage] and who are or have been in an intimate relationship regardless of whether such persons have lived together at any time.” (Family Ct Act § 812 [1] [e] [eff July 21, 2008].) In enacting this provision, the Legislature declined to provide a definition of “intimate relationship” except to expressly exclude casual acquaintances and ordinary fraternization in a business or social context. Here, because the parties would not be “members of the same family or household” otherwise, petitioner can seek relief in Family Court only if she can establish that she and the respondent were engaged in an intimate relationship.
Petitioner alleges that, despite the fact that she is married, she and the respondent have engaged in an intermittent relationship which has been sexual in nature. The most recent involvement lasted approximately 10 days. When things went badly, she resumed cohabiting with her husband and it was then, she alleges, that the respondent engaged in the offensive behavior described in her petition. The court takes judicial notice of past proceedings involving the petitioner and her husband and notes that they have a child as part of their family. There is no proof that the petitioner and respondent have a child in common and it appears that such is not, in fact, the case.
The Legislature has provided three nonexclusive factors that courts may consider in determining whether a particular relationship is “intimate”: (a) the nature or type of relationship, regardless of whether it is sexual in nature, (b) the frequency of interaction between the parties, and (c) the duration of the relationship. Here, the parties have had what may be described as *666 an “on-again, off-again” relationship. It appears that when the petitioner grows weary of her husband, which seems to occur with some frequency, she rekindles her relationship with the respondent. Eventually, she either tires of him or finds renewed interest in her husband (or both) and a new cycle begins. No facts have been presented as to how many cycles there have been or how long a typical cycle lasts, but the fact that the relationship is both recurring and sexual in nature is, in this court’s view, convincing proof that it meets the statutory standard of intimacy.
However, the court finds that for reasons of public policy it ought not to entertain this petition. It has long been recognized that one of the Legislature’s aims in enacting Family Court Act article 8 was to preserve the “family or household unit.” (People v Allen, 27 NY2d 108, 112 [1970].) Stated somewhat differently, when what would otherwise be relatively minor criminal conduct occurs between persons who are involved in certain relationships, the Legislature has chosen to offer those persons an alternate route to resolve the matter that does not involve the harshness and stigma of criminal sanctions. These relationships are of such a nature that the Legislature has seen fit to seek to support or protect them by offering them a kinder and gentler way of stopping violence, ending disruption within the relationship, and providing the victim with protection. Although the Legislature has amended article 8 a number of times since Allen to expand the class of “members of the same family or household” who are authorized to seek relief in Family Court, the goal of ending family disruption remains unchanged. (See Family Ct Act § 812 [2] [b]; Matter of Hamm-Jones v Jones, 14 AD3d 956 [3d Dept 2005].)
“[M]embers of the same family or household” as defined in section 812 (1) is now expanded to include persons engaged in an intimate relationship. While persons engaged in an intimate relationship may not, strictly speaking, be members of the same “family” or “household,” the nature of that relationship is now deemed by the Legislature to be one worthy of Family Court’s protection under article 8.
Were it not for the fact that the petitioner is married to someone other than the respondent, this court would not hesitate to entertain her petition. However, the State maintains an abiding interest in the sanctity of the marital relationship. Indeed, the Court of Appeals has observed that “[t]here are, in effect, three parties to every marriage, the man, the woman and the State.” *667 (Hernandez v Robles, 7 NY3d 338, 367 [2006, Graffeo, J., concurring], quoting Fearon v Treanor, 272 NY 268, 272 [1936], appeal dismissed 301 US 667 [1937].) The Legislature has enacted provisions for both the solemnization and the dissolution of marriages (Domestic Relations Law arts 3 [solemnization], 9-12 [dissolution]) as well as criminal penalties for those guilty of certain offenses affecting the marital relationship (Penal Law art 255). “Implicit in [article 8] is the proposition that the family or household unit which is sought to be preserved must be one whose continued existence is consistent with both public policy and the laws of this State.” (People v Allen at 112 [emphasis added].) Because the relationship that has existed intermittently between these parties is antagonistic to the marital relationship between the petitioner and her husband (and the “family unit” consisting of the petitioner, her husband and their child), this court believes it would be a violation of public policy for the court to be placed in the awkward and untenable position of extending to the petitioner the benefits of proceeding civilly in Family Court when that would tend to undermine her marriage and actually work toward the disruption of her “family unit.” Accordingly, her petition is dismissed.
This result does not leave the petitioner without a remedy. She has the right to seek protection for herself and her husband in a local criminal court. The temporary order of protection issued in her favor at the time of her ex parte application will remain in effect for a reasonable period to allow her time to do so.