OPINION OF THE COURT
Ann E. O’Shea, J.
*1149 Petitioner seeks an order of protection pursuant to section 842 of the Family Court Act against respondent, whom he asserts is the live-in boyfriend of the mother of his children. Petitioner alleges that on June 19, 2009, after serving the mother with a custody petition, he received a threatening and harassing phone call from respondent. In addition, petitioner claims respondent has physically threatened him on at least three other occasions during the past seven months, causing him to fear for his safety. He asks for an order which would require respondent to stay away from his property and place of business and preclude respondent from having any contact with petitioner or being present while petitioner visits with his children.
Family Court is a court of limited jurisdiction (see e.g. Matter of Walker v Walker, 86 NY2d 624, 629 [1995]). Article 8 of the Family Court Act, adopted by the legislature in 1962, authorizes the Family Court to issue civil orders of protection to “members of the same family or household” (Family Ct Act § 812 [1]). The statute offers victims of domestic violence a “kinder and gentler way of stopping violence” that does not involve the “harshness and stigma of criminal sanctions” (Matter of Jessica D. v Jeremy H., 24 Misc 3d 664, 666 [Fam Ct, Madison County 2009]). It provides “practical help in a civil proceeding to the victim” (Matter of K.V. v K.F., 22 Misc 3d 372, 374 [Fam Ct, Onondaga County 2008] [internal quotation marks omitted]) by requiring a lower burden of proof to be met than is necessary to obtain similar protections in a criminal proceeding (Matter of K.J. v K.K., 23 Misc 3d 754, 762 [Fam Ct, Orange County 2009]).
Prior to July 2008, the statute provided protection to “members of the same family or household,” which was defined as:
“(a) persons related by consanguinity or affinity;
“(b) persons legally married to one another;
“(c) persons formerly married to one another; and “(d) persons who have a child in common regardless whether such persons have been married or have lived together at any time” (Family Ct Act § 812 [former (1)]).
Petitioner and respondent do not fit within any of the foregoing categories: they are not and never have been married to each other, they are not otherwise related by blood or marriage, and they do not have a child in common.
In July 2008, the legislature expanded the definition of “members of the same family or household” to include “persons *1150 who are not related by consanguinity or affinity and who are or have been in an intimate relationship regardless of whether such persons have lived together at any time” (Family Ct Act § 812 [1] [e]). The legislature declined to define “intimate relationship,” describing it only as something more than “a casual acquaintance [or] ordinary fraternization between two individuals in business or social contexts” (id.). Leaving more precise definition to the courts, the legislature suggested factors to be considered in determining whether an “intimate relationship” exists, including but not limited to “the nature or type of relationship, regardless of whether the relationship is sexual in nature; the frequency of interaction between the persons; and the duration of the relationship” (id.). The legislative history of the 2008 amendment indicates that the legislature intended to extend the protections of the Family Court Act primarily to dating couples who are not married or who do not share a child in common, and same-sex partners. In a memorandum in support of the bill that he introduced, Senator George H. Winner, Jr., cited a study which reported “at least half of the [domestic violence] incidents in 7 out of 10 sites surveyed involve non-family relationships, most often dating couples” (Senate Introducer Mem in Support, Bill Jacket, L 2008, ch 326). In a letter seeking the Governor’s endorsement, Senator Winner expressed particular concern for unmarried teenage victims of domestic violence stating that the purpose of the bill was to “[allow] these victims, who are often young women easily intimidated by their abuser [sic] and afraid of retribution, to access the more approachable family court system” (Letter from Senator George H. Winner, Jr., to Terryl Brown Clemons, Acting Counsel to Governor, July 14, 2008, Bill Jacket, L 2008, ch 326).
The Executive Director of the New York State Office for the Prevention of Domestic Violence urged passage of the amendment extending protections to “couples who are dating but not yet married and couples who are dating but cannot or choose not to marry,” noting that “[i]ntimate partners who are not married . . . are often practically indistinguishable from those who are married” (Mem from Amy Barasch to Senator George Winner and Assemblywoman Helene Weinstein in Support of 2008 NY Senate-Assembly Bill S8665, A11707, June 22, 2008, Bill Jacket, L 2008, ch 326). The Barasch memorandum cites a 1997 report of the State Commission on Domestic Violence Fatalities, which recommended expanding the statutory definí *1151 tion of family or household to include “co-habiting, same-sex and dating couples.” The Domestic Violence Committee of the New York City Bar threw its support behind the bill to cure what it saw as the existing law’s deficiencies in protecting “partners in an intimate relationship who do not have children together, same-sex couples and current or former cohabiting intimate partners” (NY City Bar Domestic Violence Comm Mem of Approval of 2008 NY Senate-Assembly Bill S8665, A11707, Bill Jacket, L 2008, ch 326).*
Given this history, it is clear that petitioner and respondent do not have an “intimate relationship” as the legislature intended that term to mean. For a relationship to be “intimate” within the meaning of the statute, it must be direct, not one that is based upon multiple degrees of separation or that exists only through a shared connection with a third party. Were it otherwise, there would be virtually no limit to the number and kinds of relationships that would come within Family Court’s protective jurisdiction. Petitioner and respondent have no direct relationship; they are not even “casual acquaintance^] ” or connected by “ordinary fraternization.” Their interactions, if any, have been infrequent and brief. Their sole connection is that each of them has had a romantic relationship with the same woman at different times. While petitioner has a statutory relationship with the woman because she and he have a child in common, and respondent and the woman have an “intimate relationship” within the meaning of Family Court Act § 812 (1) (e) (see Matter of Jessica D. v Jeremy H., 24 Misc 3d 664, 666-667 [2009]), petitioner and respondent do not have any cognizable relationship with each other.
Because petitioner does not have a blood, affinity, or intimate relationship with respondent, he lacks standing to seek an order of protection against respondent under the Family Court Act. Therefore, his petition is dismissed.

 Criticisms of the 2008 amendment centered on the impact of additional petitions for civil orders of protection on an understaffed, under-resourced Family Court system already straining under the weight of nearly 700,000 new cases filed each year (Letter from David M. Brockway, President, Assn of Judges of Fam Ct of St of NY, to Terryl Brown Clemons, Acting Counsel to Governor, July 7, 2008, RE: VETO: “Fair Access to Family Court”-S8665/ A11707, Bill Jacket, L 2008, ch 326). There is no reported discussion of vesting any other courts within the New York State Unified Court System with jurisdiction over “intimate relationship” petitions.