OPINION OF THE COURT
Vito M. DeStefano, J.
Defendant Dorothy A. Phillips moves for an order pursuant to CPLR 3211 (a) (7) to dismiss the complaint insofar as asserted against her and pursuant to 22 NYCRR 216.1 to seal her home address “from the files in this action.” For the reasons that follow, the defendant’s motion is granted in its entirety.
Background
On June 26, 2009, Lottie Rae Kogut (Lottie) appeared in Nassau County Family Court seeking an order of protection on her own behalf and on behalf of her son, David Kogut (David), against plaintiff Rudolph Lodichand (Lodichand). Defendant Dorothy A. Phillips, a Family Court Attorney Referee (Referee Phillips), upon reviewing Lottie’s family offense petition,[1] issued an ex parte temporary order of protection in favor of Lot *893 tie and against Lodichand, but declined to issue an order of protection in favor of David. The order of protection required that Lodichand (misspelled in the petition as Lodichard), refrain from communicating with Lottie and from assaulting, stalking, harassing, and menacing her. In addition, the order prohibited Lodichand from engaging in other criminal acts against Lottie. The family offense petition summons accompanying the order of protection indicated that proceedings pertaining to the order of protection were scheduled to be heard on July 29, 2009.
On July 29th, Lottie and an attorney for Lodichand appeared in Family Court. At that time, Lodichand’s attorney argued that there was no “blood relation between the petitioner and [his] client” and no “children together” and thus the petition should be dismissed “on the jurisdictional basis” (proceedings dated July 29, 2009, at 4-5, exhibit E to motion). When Family Court Judge Conrad D. Singer inquired into the relationship between Lottie and Lodichand, Lottie stated that Lodichand was the caretaker for her ill son David, that the relationship was “very complicated” and that Lodichand was not an employee. She went on to state that Lodichand was a friend, who had been starting a business with her son, but that her son’s condition became progressively worse (id. at 6). In addition, Lottie noted that Lodichand was caring for his wife, who had the same illness as David and that he was “helping . . . for several years now” (id.).
Judge Singer dismissed the petition and vacated the order of protection on the basis that he didn’t have “jurisdiction of it. There’s not the required relationship as needed in the Family Court Act existing between you and the caretaker” (id. at 7).
Plaintiffs Lodichand, Leslie Hyams and David commenced the instant action against the denominated defendants seeking compensatory and punitive damages. The complaint contains four causes of action, each of which is asserted against all defendants. In the first cause of action, Lodichand alleges, in relevant part, the legal status of the various parties, describing Da *894 vid as Lottie’s son who was diagnosed with multiple sclerosis, stating that Lottie appeared in Family Court accusing Lodichand of committing various offenses against her and David, and that Referee Phillips issued an order of protection, which was vacated by Judge Singer. Regarding the specific wrongdoing alleged against Referee Phillips, Lodichand asserted that she “was and is precluded by the Family Court Act from, and legally incapable of, issuing said Temporary Order of Protection . . . due to lack of jurisdiction” (plaintiffs’ complaint at 1-5). The first cause of action describes the foregoing as an abuse of process for which the defendants were jointly and severally liable, thus entitling Lodichand to compensatory and punitive damages.
The second cause of action alleges, inter alia, that inasmuch as there was no “probable cause or legal basis for the filing and issuance of said Family Court Petition, Summons and Temporary Order of Protection,” the defendants’ actions constitute malicious prosecution for which Lodichand was entitled to compensatory and punitive damages (plaintiffs’ complaint at 7-8).
The third cause of action seeks compensatory and punitive damages in favor of Lodichand’s wife (plaintiff Leslie Hyams) based on the alleged willful and intentional infliction of pain, suffering and mental anguish and emotional distress upon her (plaintiffs’ complaint at 8-9).
The fourth cause of action seeks compensatory and punitive damages in favor of plaintiff David Kogut based on the alleged willful and intentional infliction of pain, suffering and mental anguish and emotional distress upon him (plaintiffs’ complaint at 8-9).
Analysis
Initially, the court notes that the plaintiffs consent to sealing Referee Phillips’ home address, and therefore, that branch of Phillips’ motion is granted. Regarding the branch of the motion seeking dismissal, the following is relevant.
The law is well settled that on a motion to dismiss pursuant to CPLR 3211, the complaint must be liberally construed, the allegations therein must be deemed true, the plaintiffs must be afforded every favorable inference which may be drawn therefrom, and the court must determine only whether the facts as alleged fit within any cognizable legal theory (Leon v Martinez, 84 NY2d 83, 88 [1994]).
At bar, the essential allegation against Referee Phillips, to wit, that she issued an order of protection without having the *895 authority/jurisdiction to do so, does not give rise to liability for which compensation may be awarded. In this regard, the doctrine of judicial immunity exempts Phillips from any liability in this matter.
The rule of judicial immunity is deeply rooted in the common law. Judicial immunity exempts judges from liability for all acts done in the exercise of a judicial function (Tarter v State of New York, 68 NY2d 511 [1986]). In Alvarez v Snyder (264 AD2d 27, 34 [1st Dept 2000] [internal quotation marks omitted]), the First Department articulated the doctrine as follows:
“ ‘A judge defending against . . . suit is entitled to absolute immunity from damages for actions performed in his judicial capacity. . . . Moreover, “[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the ‘clear absence of all jurisdiction’ ” [citation omitted]’ (Fields v Soloff, 920 F2d 1114, 1119). Moreover, ‘[1]lability will not attach where a judge violated state law by an incorrect decision’ (supra, at 1119). It has long been recognized that ‘[flew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction’ (Pierson v Ray, 386 US 547, 553-554, citing to adoption of doctrine in Bradley v Fisher, 13 Wall [80 US] 335; accord, Mireles v Waco, 502 US 9), a common-law protection long recognized to extend specifically to actions brought under 42 USC § 1983 (Zuckerman v Appellate Div., 421 F2d 625, 626, n 2, citing Pierson v Ray, supra, at 554). The goal is not to benefit the Judge, but to protect the public on whose benefit the Judge acts; that benefit is to secure a Judge’s ability to act independently without fear of personal consequences (Pierson v Ray, supra, at 554).
“As with other forms of immunity, ‘judicial immunity is an immunity from suit, not just from ultimate assessment of damages’ (Mireles v Waco, supra, at 11; see, Mitchell v Forsyth, 472 US 511, 526). Only two exceptions to the doctrine are recognized: when a Judge does not act as a Judge, or when a Judge, though acting under color of judicial authority, lacks any jurisdiction supporting *896 judicial authority for the action taken (Mireles v Waco, supra, at 11-12; Pierson v Ray, supra).”
The doctrine is broadly construed and extends not only to judges but to officials performing or assisting in the performance of judicial functions. In this regard, in Weiner v State of New York (273 AX)2d 95, 97-98 [1st Dept 2000]), the court held:
“[J]udicial immunity ‘applies to all acts of auxiliary court personnel that are “basic and integral part[s] of the judicial [process],” unless those acts are done “in the clear absence of all jurisdiction” ’ (Sindram v Suda, 986 F2d 1459, 1461 [DC Cir 1993], [quoting] Mullis v United States Bankruptcy Ct., 828 F2d 1385, 1390 [9th Cir 1987], appeal dismissed and cert denied 486 US 1040; Foster v Walsh, 864 F2d 416, 417 [6th Cir 1988]; Dellenbach v Letsinger, 889 F2d 755, 763 [7th Cir 1989], cert denied 494 US 1085; Rodriguez v Weprin, 116 F3d 62 [2d Cir 1997]). As the Seventh Circuit Court of Appeals aptly noted, it is necessary to extend judicial immunity to non-judicial court personnel performing their prescribed functions, in order to avoid ‘[t]he danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts’ (Scruggs v Moellering, 870 F2d 376, 377, cert denied 493 US 956).”
It cannot be disputed that Ms. Phillips, as a Court Attorney Referee in Family Court, was acting in a judicial capacity when she issued the subject order of protection (see CPLR 4301 [“A referee to determine an issue or to perform an act shall have all the powers of a court in performing a like function”]; Weiner v State at 98 [“The preparation of petitions by Family Court petition clerks is an integral part of the judicial process of hearing and ruling upon a violation of visitation claim, and, accordingly, judicial immunity precludes any negligence claim”]; Colin v County of Suffolk, 181 AD2d 653, 654 [2d Dept 1992] [“Judges and those who perform similar functions, such as Hearing Examiners, ‘ “are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously and corruptly” ’ ” (quoting Stump v Sparkman, 435 US 349, 356 [1978])]).
Assuming that the subject order of protection was issued erroneously, which appears to be the case, the primary question, *897 therefore, is whether Referee Phillips acted in excess of her authority, which would entitle her to the benefit of judicial immunity, or “in the clear absence of all jurisdiction,” which would not. It is also significant to note that judicial officers erroneously assuming jurisdiction in good faith are exempt from liability under the doctrine of judicial immunity (see 3-55 Warren’s Negligence in New York Courts § 55.01 [3] [c], citing Jameison v State of New York, 4 Misc 2d 326 [Ct Cl 1956], affd 7 AD2d 944 [3d Dept 1959]).
The opinion of the United States Supreme Court in Bradley v Fisher (13 Wall [80 US] 335 [1872]) provides guidance on the contours and scope of judicial immunity.
In Bradley (at 351-352), the Court observed that
“[a] distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public of-fences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an of-fence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would *898 attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked. Indeed some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons.” (See also Maestri v Jutkofsky, 860 F2d 50, 53 [2d Cir 1988] [“For a judge to assume authority outside the geographic bounds of his office is the kind of clear judicial usurpation which cannot be condoned by any grant of immunity”]; compare Stump v Sparkman, supra [Indiana state court judge who ordered sterilization of minor in violation of established procedures was judicially immune from suit because he acted in judicial capacity and performed functions that were historically immune from civil lawsuits]; see also Sassower v Finnerty, 96 AD2d 585, 586 [2d Dept 1983] [“Judicial immunity extends to all Judges and encompasses all judicial acts, even if such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly” (emphasis added)].)
The allegations in the complaint concerning the lack of familial relation between Lodichand and Lottie or David, the improper issuance of the order of protection based thereon, and its subsequent vacatur are insufficient to overcome the judicial immunity to which Referee Phillips is entitled. In this regard, pursuant to article 8 of the Family Court Act, a judge/referee of the Family Court has the authority to issue orders of protection to “members of the same family or household” (Family Ct Act § 812 [1]). Prior to July 2008, this term was defined to include persons related by consanguinity or affinity, persons legally married to one another, persons formerly married to one another and persons who had a child in common (Family Ct Act § 812 [1], as amended by L 1994, ch 222, § 7).
However, Family Court Act § 812 (1) was amended in July 2008 by expanding the definition of “members of the same fam *899 ily or household” to include “persons who are not related by consanguinity or affinity and who are or have been in an intimate relationship regardless of whether such persons have lived together at any time” (Family Ct Act § 812 [1] [e], as added by L 2008, ch 326, § 7).
“The legislature declined to define ‘intimate relationship,’ describing it only as something more than ‘a casual acquaintance [or] ordinary fraternization between two individuals in business or social contexts.’ . . . Leaving more precise definition to the courts, the legislature suggested factors to be considered in determining whether an ‘intimate relationship’ exists, including but not limited to ‘the nature or type of relationship, regardless of whether the relationship is sexual in nature; the frequency of interaction between the persons; and the duration of the relationship’ ” (Matter of Mark W. v Damion W, 25 Misc 3d 1148, 1150 [Fam Ct, Kings County 2009]; see also Matter of R.M.W. v G.M.M., 23 Misc 3d 713, 716 [Fam Ct, Nassau County 2009] [“Unfortunately, neither the statute nor the legislative history . . . sheds much light on how to define the term ‘intimate relationship’ ”]).
Furthermore, as noted in the memorandum of law submitted with the motion, the Practice Commentaries accompanying the statute actually comment on the legislature’s failure to define the term “intimate relationship”:
“Instead of defining what is meant by [that term], the Legislature has incorporated a collection of generalized ‘factors’ . . . [but] the Court is [not] limited to those factors ....
“Just where the lines will be conclusively drawn is anyone’s guess ....
“Ultimately, the appellate courts will determine the parameters of ‘intimate’ relationships for Section 812 purposes. In the meantime, indeed for the next several years, courts, counsel and parties to actual, or to potential, Article 8 litigation must grapple with the issue.” (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 812, at 228 [2010 ed].)
The petition filed by Lottie articulated a relationship between herself and Lodichand and between Lodichand and her son David. It alleged a course of conduct of intimidation and threats *900 committed by Lodichand against her and David, and included an allegation of unwanted physical contact. Assuming that Referee Phillips acted improvidently in issuing an order of protection based on these allegations, such action did not remove the cloak of judicial immunity with which she was protected.
Accordingly, it is hereby ordered that the branch of the motion seeking dismissal of the complaint insofar as asserted against Referee Phillips is granted and the complaint is dismissed to that extent.[2] It is further ordered that the clerk of the court is directed to seal Referee Phillips’ home address, wherever it appears in the file, including on the summons with notice.

. In the family offense petition, Lottie asserted that she and David needed an order of protection because Lodichand (described as respondent in the petition) allegedly:
“Engages in a course of conduct and repeatedly commits acts which, alarm, annoy, intimidate, aggravate, humiliate, and seriously endanger my son and frighten me that serve no legitimate purpose. Many years ago I verbally agreed that the Respondent could be the caregiver for my son who is diagnosed with MS and [is] indigent. I have since discovered that the Respondent has been neglecting my son. I was notified that my son was hospitalized in Long Beach Medical Center. Over the years, the Respondent has prevented me from seeing or having any contact with my son until he recently notified me that my son was admitted to the hospital. My son is due to be discharged from the hospital on Monday 6/29/09. I am elderly and unable to care for my son and I am heart broken and terrified for what is happening to my son and myself. The Respondent regularly yells, screams uses abusive and obscene language to me and he calls me at all hours of the night making it extremely difficult for me to get a good nights sleep. I feel that I am at the mercy of the Respondent
*893 because I am unable to care for my son. He constantly interrogates me. The Respondent exhibits angry, bitter, hostile, erratic and explosive behavior towards me; he has hit me on my shoulder. I have no family here and my attorney ... I request a stay away Order of Protection for my son and myself. I further ask that Police escort remove the Respondent from my son’s apartment with all of his personal belongings. Petitioner asks for a referral from the Court to Adult Protective Services, in addition this Probation Department has notified APS.”

. In any event, the third and fourth causes of action in the complaint, which advance claims in favor of Hyams and David, respectively, would have to be dismissed because they assert no valid causes of action against Referee Phillips.