[906 NYS2d 119]

In the Matter of JESSICA D., Appellant, v JEREMY H., Respondent.

Third Department, June 24, 2010

APPEARANCES OF COUNSEL

*Lisa A. Burgess*, Indian Lake, for appellant.
*Tracey A. Donovan Laughlin*, Cherry Valley, for respondent.

OPINION OF THE COURT

MERCURE, J.

The question that we must answer on this appeal is whether Family Court has jurisdiction to entertain an application for an order of protection made by a married woman, who lives with her husband, against a boyfriend with whom she has an intermittent sexual relationship. We hold that it was the intent of the Legislature to include "boyfriend/girlfriend" relationships within the plain terms of the recently revised Family Ct Act § 812 (1) (e) and, accordingly, Family Court should not have dismissed the petition on public policy grounds.

Petitioner, who resided with her husband and six-year-old daughter, filed a family offense petition against respondent in January 2009 alleging harassment and aggravated harassment. Petitioner testified that respondent was her boyfriend until he became violent and she ended their most recent involvement—a sexual relationship lasting approximately 10 days. Petitioner alleged that respondent struck her leg and threatened to kill her and her husband by shooting them, causing her to be concerned for her safety and the safety of her husband and daughter. Family Court initially issued a temporary order of protection in petitioner's favor. Subsequently, the court granted respondent's motion to dismiss the petition for lack of jurisdiction, but left the temporary order of protection in effect "for a reasonable period" of time to allow petitioner to seek an order of protection in criminal court (24 Misc 3d 664, 667 [2009]). Family Court determined that the parties' relationship met "the statutory standard of intimacy," but refused to entertain the petition "for reasons of public policy" (*id.* at 666). Petitioner now appeals.

The question of whether Family Court has jurisdiction turns on the nature of the parties' relationship. If that relationship is an "intimate relationship" within the meaning of Family Ct Act § 812 (1) (e), the court has jurisdiction. Pursuant to Family Ct Act § 812 (1), "[t]he family court and the criminal courts shall have concurrent jurisdiction over any proceeding concerning

acts which would constitute [certain enumerated crimes, including harassment and aggravated harassment] . . . between members of the same family or household." In 2008, the definition of "members of the same family or household" was radically expanded to include individuals "who are or have been in an intimate relationship regardless of whether such persons have lived together at any time" (Family Ct Act § 812 [1] [e], as added by L 2008, ch 326, § 7; see Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 812, at 227-230). Although the term "intimate relationship" is not defined, the statute provides factors to be considered in determining whether such a relationship exists, including but

> "not limited to: the nature or type of relationship, regardless of whether the relationship is sexual in nature; the frequency of interaction between the persons; and the duration of the relationship. Neither a casual acquaintance nor ordinary fraternization between two individuals in business or social contexts shall be deemed to constitute an 'intimate relationship' " (Family Ct Act § 812 [1] [e]).

Here, as Family Court aptly described it, the parties have "an 'on-again, off-again' relationship. It appears that when the petitioner grows weary of her husband, which seems to occur with some frequency, she rekindles her relationship with the respondent. Eventually, she either tires of him or finds renewed interest in her husband (or both) and a new cycle begins" (24 Misc 3d at 666). The court dismissed the petition as violative of public policy, noting the state's abiding interest in preserving the marital relationship (see Hernandez v Robles, 7 NY3d 338, 367 [2006] [Graffeo, J., concurring]), that a family offense proceeding is defined as a "civil proceeding [that] is for the purpose of attempting to stop the violence, *end the family disruption* and obtain protection" (Family Ct Act § 812 [2] [b] [emphasis added]), and that—while she might prefer to proceed in Family Court—petitioner has the ability to pursue an order of protection in criminal court (24 Misc 3d at 666-667).

While acknowledging Family Court's policy concerns, it remains "fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature," as expressed by the statute's text (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998] [internal quotation marks and citation omitted]). Because the Legislature declined to include a definition of the term "intimate relationship" in

Family Ct Act § 812 (1) (e), "courts should construe the term using its usual and commonly understood meaning" (*Matter of Orens v Novello*, 99 NY2d 180, 185-186 [2002] [internal quotation marks and citation omitted]; *see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d at 583). Here, the parties and Family Court agreed that the parties, who have an intermittent sexual relationship and periodically live together, "are or have been in an intimate relationship" (Family Ct Act § 812 [1] [e]). As such, the parties' relationship fits within the plain terms of the revised section 812 (1) (e). Indeed, the legislative history of the amendment adding subdivision (1) (e) indicates that the Legislature intended to extend the statute's reach to just these types of relationships—

> "(1) unrelated persons who are continually or at regular intervals living in the same household or who have in the past continually or at regular intervals lived in the same household and (2) persons who are or have been in an intimate or dating relationship regardless of whether such persons have lived together at any time" (Letter from Assembly Sponsor, July 15, 2008, Bill Jacket, L 2008, ch 326, at 9; *see* Senate Introducer Mem in Support, Bill Jacket, L 2008, ch 326, at 10-11; 18 NYCRR 452.2 [g] [2] [v], [vi]; *cf. Matter of Seye v Lamar*, 72 AD3d 975, 977 [2010]; *Matter of Rollerson v New*, 28 Misc 3d 663, 665-666 [2010]).

In that regard, we note that the primary purpose of a family offense proceeding initially was, as Family Court recognized, to "attempt[ ] to keep the family unit intact" (Family Ct Act § 812 [2] [former (b)], as amended by L 1978, ch 628, § 3) and, thus, the statute originally "contemplate[d] conciliation procedures" (Family Ct Act former § 811, repealed by L 1981, ch 416, § 13). Since that time, the law has evolved "to provide new focus and direction for more aggressive measures that would protect victims of domestic violence" (*Matter of Walker v Walker*, 86 NY2d 624, 628 [1995]; *see* L 1994, ch 222, § 1). In accordance with that shift in the law, "the core purpose of Family Court Act article 8" has become "provid[ing] reasonable means and methods of protection and enforcement for victims of domestic violence" (*Matter of Walker v Walker*, 86 NY2d at 628; *see* Family Ct Act § 812 [2] [b]), and the most recent amendment of the statute is, in essence, an attempt to further protect domestic violence victims by expanding the reach of Family Court's juris-

diction (*see* Letter from Senate Sponsor, July 14, 2008, Bill Jacket, L 2008, ch 326, at 7; *see also Matter of Mark W. v Damion W.*, 25 Misc 3d 1148, 1151 [2009]; *Matter of K.J. v K.K.*, 23 Misc 3d 754, 758-760 [2009]). Thus, "there is no room for construction" under the circumstances of this case (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d at 583 [internal quotation marks and citation omitted]). "[C]ourts have no right to add to or take away from [the statute's plain] meaning" (*id.* [internal quotation marks and citation omitted]). Rather, our sole objective "is to discern and apply the will of the Legislature, not the court's own perception of what might be equitable" (*Matter of Orens v Novello*, 99 NY2d at 185 [internal quotation marks and citation omitted]). Accordingly, given the Legislature's intent—expressed both in the plain terms of the statute and the legislative history—to extend jurisdiction to cover relationships such as the parties' herein, Family Court should not have declined to exercise jurisdiction on public policy grounds.

CARDONA, P.J., SPAIN, KAVANAGH and GARRY, JJ., concur.

Ordered that the order is reversed, on the law, without costs, and matter remitted to the Family Court of Madison County for further proceedings not inconsistent with this Court's decision.