OPINION OF THE COURT
Leventhal, J.
On this appeal, we have the opportunity to address whether the Family Court has subject matter jurisdiction where it is alleged that a family offense has been committed by a person whose relationship to the subject child is akin to the relationship between a stepparent and stepchild.
In October 2010, the petitioner father commenced this family offense proceeding on behalf of his then-nine-year-old daughter by filing a family offense petition against the respondent (hereinafter the boyfriend), who was the live-in boyfriend of the mother. On this appeal we address whether the Family Court properly dismissed the petition on the ground that it did not have subject matter jurisdiction within the meaning of Family Court Act § 812. We hold that, on these facts, the Family Court did have subject matter jurisdiction over this proceeding.
The father alleged, in effect, that his daughter, K.M. (hereinafter the child), was in an “intimate relationship” (Family Ct Act § 812 [1] [e]) with the boyfriend. The petition alleged that, on September 25, 2010, the boyfriend “tied [the child] up with [a belt] around her hands which were pulled behind her back before being tied and [the child was tied with a belt] around her ankles.” After tying up the child, the boyfriend allegedly “dumped her on the couch and then later [on] the kitchen table.” The child was crying and calling for her mother throughout the incident. The child’s mother finally appeared and told the boyfriend to stop, but he left the child tied up for several more minutes and told her that he would put her out on the fire escape the next time he tied her up. According to the petition, the child was terrified of the boyfriend and did not want to see the mother. The father alleged that he filed a police *245 report and contacted the Administration for Children’s Services (hereinafter ACS), which then initiated an investigation. The father requested, inter alia, that the Family Court enter an order of protection against the boyfriend and in favor of the child.
On the same day that he filed the petition, the father appeared before the Family Court. The father explained that he and the mother had a joint custody arrangement under which the father would have custody of the child during the week and one weekend per month, and the mother would have visitation with the child three weekends per month. The incident alleged in the petition had occurred during the weekend prior to the filing of the petition. The Family Court issued a temporary order suspending visitation between the mother and the child until the next court appearance.
On October 12, 2010, the father and the boyfriend appeared, both pro se, before the Family Court, and the mother appeared with an attorney. At this time, the court also assigned an attorney for the child.
On April 11, 2011, the father and mother appeared, both pro se, and the child appeared through her assigned counsel. The boyfriend was not present. The father and the attorney for the child both sought to proceed with the family offense petition against the boyfriend. During this court appearance, the Family Court stated that because the boyfriend was not related to the child by blood or affinity, an issue existed as to whether there was an “intimate relationship” between the two. In response, the attorney for the child argued that the boyfriend was acting as the child’s stepfather since the child was at the boyfriend’s residence on a regular basis, the child identified the boyfriend as her stepfather, and the boyfriend exercised parental authority over the child.
On May 23, 2011, the father, the mother, and the boyfriend, each pro se, appeared before the Family Court. The Family Court stated that the legislature did not intend the term “intimate relationship” to cover situations such as this, involving a “quasi stepchild versus a quasi stepparent.” Further, the Family Court stated that considering the lack of intervention by ACS or the police with respect to the allegations raised in the petition, it was “reasonably comfortable that there [weren’t] other issues [requiring the Family Court] to stay involved.” The Family Court concluded that it did not have subject matter jurisdiction over the proceeding because the parties are not related by blood or affinity and, therefore, they were not in an *246 intimate relationship within the meaning of the Family Court Act.
In an order dated May 23, 2011, the Family Court dismissed the petition for lack of subject matter jurisdiction. The child appeals, and we reverse.
On appeal, the attorney for the child contends that her client and the boyfriend were in an “intimate relationship” within the meaning of Family Court Act § 812 (1) (e), giving the Family Court subject matter jurisdiction over this proceeding. In addition, counsel argues that the Family Court should not have determined that its aid was not required based on the lack of intervention by ACS or the police.
“[A] court’s lack of subject matter jurisdiction is not waivable, but may be [raised] at any stage of the action, and the court may, ex mero motu [on its own motion], at any time, when its attention is called to the facts, refuse to proceed further and dismiss the action” (Financial Indus. Regulatory Auth., Inc. v Fiero, 10 NY3d 12, 17 [2008]).
The Family Court is a court of limited jurisdiction, constrained to exercise only those powers conferred upon it by the New York Constitution or by statute (see Matter of H.M. v E.T., 14 NY3d 521 [2010]; Matter of Johna M.S. v Russell E.S., 10 NY3d 364, 366 [2008]).
Pursuant to Family Court Act § 812 (1), the Family Court’s jurisdiction in family offense proceedings is limited to certain enumerated acts that occur “between spouses or former spouses, or between parent and child or between members of the same family or household” (emphasis added; see Matter of Seye v Lamar, 72 AD3d 975, 976 [2010]). Prior to July 21, 2008, for the purposes of Family Court Act article 8, the term “members of the same family or household” was defined as (1) persons related by consanguinity or affinity; (2) persons legally married to one another; (3) persons formerly married to one another; and (4) persons who have a child in common regardless of whether such persons have been married or have lived together at any time (see Family Ct Act former § 812 [1], as amended by L 1994, ch 222, § 7; Matter of Seye v Lamar, 72 AD3d at 976).
On July 21, 2008 (see L 2008, ch 326, § 7), the legislature expanded the definition of “ ‘members of the same family or household’ ” to include, among others, “persons who are not related by consanguinity or affinity and who are or have been in an intimate relationship regardless of whether such persons *247 have lived together at any time” (Family Ct Act § 812 [1] [e] [hereinafter the 2008 amendment]). The legislature expressly excluded from the definition of “intimate relationship” a “casual acquaintance” and “ordinary fraternization between two individuals in business or social contexts” (Family Ct Act § 812 [1] [e]). However, beyond those delineated exclusions, the legislature left it to the courts to determine, on a case-by-case basis, what qualifies as an “intimate relationship” within the meaning of Family Court Act § 812 (1) (e). Additionally, the legislature suggested certain factors which the courts may consider, including, but not limited to, “the nature or type of relationship, regardless of whether the relationship is sexual in nature; the frequency of interaction between the persons; and the duration of the relationship” (Family Ct Act § 812 [1] [e]).
Following the 2008 amendment, courts have found that persons who have dated or were engaged in a sexual relationship are covered within the meaning of “intimate relationship” (Matter of LaVann v Bell, 77 AD3d 1422, 1423 [2010] [explaining that parties engaged in a sexual relationship have an “intimate relationship” within the meaning of the statute]; see Matter of Jessica D. v Jeremy H., 77 AD3d 87, 88-90 [2010] [finding that the petitioner, a married woman, had an “intimate relationship” with the respondent, her intermittent boyfriend]; Matter of Willis v Rhinehart, 76 AD3d 641, 643 [2010] [rejecting the appellant’s contention that, in order for the Family Court to exercise jurisdiction over a terminated intimate relationship, the relationship must have ended at a time relatively recent to the filing of the petition]; Matter of K.V. v K.F., 22 Misc 3d 372, 379 [2008] [determining that the Family Court had jurisdiction over a family offense petition brought by the petitioner against her ex-boyfriend]).
The record before us clearly supports a finding that the mother and the boyfriend are in an intimate relationship. However, while the nature of the relationship between the mother and the boyfriend is relevant, it is not dispositive of the issue before the Court. In this regard, case law suggests that in order for an “intimate relationship” to exist within the meaning of Family Court Act § 812, the relationship should be direct, not one based upon a connection with a third party (see Matter of Parrella v Freely, 90 AD3d 664, 665 [2011] [holding that the petitioner was not in an “intimate relationship” with the respondent, who was dating the petitioner’s former boyfriend, with whom the petitioner had a child; the parties had only met *248 during the course of court proceedings and the respondent had never met the petitioner’s child]; Matter of Riedel v Vasquez, 88 AD3d 725, 725 [2011] [holding that the petitioner was not in an “intimate relationship” with the respondent, who was the estranged wife of the petitioner’s live-in boyfriend, even though both had children with the same man]; Matter of Tyrone T. v Katherine M., 78 AD3d 545, 545 [2010] [concluding that the petitioner, who was the boyfriend of the respondent’s sister, and a friend of the respondent, did not have an “intimate relationship” with the respondent]; Matter of Seye v Lamar, 72 AD3d at 977 [concluding that an “intimate relationship” did not exist where the parties had no direct relationship and were only connected by virtue of the fact that the petitioner and the respondent’s brother, who never were married, had a child in common]; Matter of Mark W. v Damion W., 25 Misc 3d 1148, 1149-1151 [2009] [finding no “intimate relationship” between the petitioner and the live-in boyfriend of the mother of the petitioner’s children]).
Nonetheless, under the facts of this case, we find that the child and the boyfriend were in an “intimate relationship” within the meaning of Family Court Act § 812 (1) (e) such that the Family Court has jurisdiction over the proceeding. We note that, even prior to the 2008 amendment, Family Court Act § 812 (1) encompassed a relationship between a stepparent and a stepchild, based on affinity (see Matter of Dulanto v Dulanto, 276 AD2d 694, 695 [2000]; Matter of Nadeau v Sullivan, 204 AD2d 913, 914 [1994]). Here, the relationship between the child and the boyfriend is direct and is akin to the relationship between a stepparent and a stepchild. The following factors, which are alleged in this case, support the existence of this “quasi-stepparent-stepchild” relationship: the boyfriend has dated the child’s mother for more than three years, he resides with the child’s mother, and the child spends substantial time visiting with the mother in the home the mother shares with the boyfriend. The allegation that the boyfriend exercises parental authority over the child while she visits with the mother is particularly significant. Moreover, the interaction between the child and the boyfriend reportedly occurs on a regular basis (three weekends per month, from Friday afternoon until Monday morning) and is likely to continue in the future. Hence, the alleged relationship between the child and the boyfriend is one of the “unique or special” relationships that “subject persons to greater vulnerability and potential abuse because of *249 their nature” (Matter of K.J. v K.K., 23 Misc 3d 754, 759 [2009]; see Morales v Roman, 30 Misc 3d 297, 299 [2010] [finding an “intimate relationship” between the petitioner and her child’s paternal grandmother, even though the petitioner and the child’s father were never married, because the parties could be expected to have a relationship for a lifetime, the father maintained a relationship with the child, and the respondent grandmother maintained a relationship with her son and grandchild]; Matter of R.M.W. v G.M.M., 23 Misc 3d 713, 716 [2009] [finding that the petitioner and the respondent, who both had children with the same man with whom the petitioner lived, were in an “intimate relationship” because the petitioner acted as a stepmother to the respondent’s children]; Matter of Maria B. v Ndoc S., NYLJ, Apr. 10, 2009 at 27, col 1 [denying the respondent’s motion to dismiss the petition and finding that the parties may be in an intimate relationship considering that the petitioner was the former daughter-in-law of the respondent, the petitioner was the mother of the respondent’s granddaughter, and the petitioner’s former husband resided with the respondent]). Our holding is consistent with the goals of a family offense proceeding, which are to “stop the violence, end the family disruption and obtain protection” (Family Ct Act § 812 [2] [b]).
We note that the determination as to whether persons are or have been in an “intimate relationship” within the meaning of Family Court Act § 812 (1) (e) is a fact-specific determination which may require a hearing. However, considering the allegations here, the Family Court possessed sufficient relevant information to allow it to make an informed determination on that issue (cf. Matter of Seye v Lamar, 72 AD3d at 977).
Consequently, the Family Court incorrectly determined that the child was not in an intimate relationship with the live-in boyfriend of her mother. Accordingly, the Family Court erred in dismissing the proceeding on the ground that it lacked subject matter jurisdiction. Our determination should not be construed as suggesting any particular determination on the merits of the petition.
In light of the above determination, the remaining argument advanced on behalf of the child need not be addressed.
Therefore, the order is reversed, on the law, the petition is reinstated, and the matter is remitted to the Family Court, Kings County, for further proceedings on the petition.
Balkin, J.R, Belen and Roman, JJ., concur.
*250 Ordered that the order is reversed, on the law, without costs or disbursements, the petition is reinstated, and the matter is remitted to the Family Court, Kings County, for further proceedings on the petition.