Clark, J.
 

 Appeal from an order of the Family Court of Saratoga County (Jensen, J.), entered October 21, 2016, which granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 8, for an order of protection.
 

 In May 2016, petitioner, acting pro se, commenced this Family Ct Act article 8 proceeding alleging that respondent committed various family offenses against her, including harassment in the first or second degree and menacing in the second or third degree. After Family Court issued an ex parte order of protection in favor of petitioner, the matter proceeded to a hearing, at the start of which respondent moved to dismiss the petition on the ground that the petition, on its face, failed to state a sufficient basis for Family Court’s subject matter jurisdiction. Family Court denied respondent’s motion and, at the close of petitioner’s proof, denied respondent’s renewed motion to dismiss the petition. At the close of evidence, Family Court found that petitioner and respondent had been in an “intimate relationship” for purposes of jurisdiction under Family Ct Act article 8 (Family Ct Act § 812 [1] [e]) and that respondent had committed the family offenses of harassment in the second degree and menacing in the third degree, granted the petition to that extent and issued a one-year order of protection in favor of petitioner. Respondent appeals,
 
 [1]
 
 and we affirm.
 

 Initially, we reject respondent’s contention that Family Court should have granted her motion to dismiss the petition for failure to state a sufficient basis for the court’s jurisdiction. Pursuant to Family Ct Act § 812 (1), Family Court has jurisdiction over family offense proceedings arising out of certain acts that occur between, as relevant here, “members of the same family or household.” For purposes of Family Ct Act article 8, “members of the same family or household” include, among others, “persons who are not related by consanguinity or affinity and who are or have been in an intimate relationship!,] regardless of whether such persons have lived together at any time” (Family Ct Act § 812 [1] [e]). Here, although petitioner did not check the box on the form petition indicating that she and respondent “were in an intimate relationship,” she did check the box indicating that they had “lived together in the past.” While cohabitation may not necessarily give rise to a finding of an intimate relationship after a hearing (see generally Family Ct Act § 812 [1] [e]; Matter of Arita v Goodman, 132 AD3d 1108, 1110 [2015]), petitioner’s pro se allegation that the parties previously lived together—when construed liberally and afforded the benefit of every favorable inference (see Matter of Brown-Winfield v Bailey, 143 AD3d 707, 708 [2016]; Matter of Craig O. v Barbara P., 118 AD3d 1068, 1070 [2014])— sufficiently stated a basis on which Family Court could have jurisdiction over the family offense proceeding (see Matter of Craig O. v Barbara P., 118 AD3d at 1070; see generally Family Ct Act § 812 [1] [e]). Accordingly, Family Court properly declined to dismiss the petition on jurisdictional grounds at that stage of the proceeding—that is, without having received proof regarding the parties’ relationship (see Matter of Singh v DiFrancisco, 141 AD3d 598, 599 [2016]; Matter of Arita v Goodman, 132 AD3d at 1110; Matter of Craig O. v Barbara P., 118 AD3d at 1070; Matter of Schneider v Arata, 81 AD3d 652, 653 [2011]).
 

 Nor are we persuaded by respondent’s argument that Family Court’s finding of an intimate relationship is unsupported by the evidence. Under Family Ct Act § 812 (1) (e), “[n]either a casual acquaintance nor ordinary fraternization between two individuals in business or social contexts shall be deemed to constitute an ‘intimate relationship’ ” (see Matter of Jessica D. v Jeremy H., 77 AD3d 87, 89 [2010]). Aside from these statutory exclusions, however, courts are tasked with deciding, on a case-by-case basis, what constitutes an intimate relationship by examining, among other factors, “the nature or type of relationship, regardless of whether the relationship is sexual in nature; the frequency of interaction between the persons; and the duration of the relationship” (Family Ct Act § 812 [1] [e]; see Matter of Samantha I. v Luis J., 122 AD3d 1090, 1091 [2014]; Matter of Riedel v Vasquez, 88 AD3d 725, 726 [2011]).
 

 The evidence established that the parties met and struck up a friendship in November 2015 at a women’s trauma support group and that, several months later, in February 2016, petitioner moved into respondent’s apartment for a period of two to three months. While the parties’ testimony differed as to how petitioner came to reside with respondent, both testified that they had agreed that petitioner would live with respondent rent-free in exchange for acting as a nanny to respondent’s seven-year-old daughter and helping with household chores.
 
 [2]
 
 Specifically, petitioner was responsible for bringing the child to and from school and caring for the child overnight when respondent’s job required her to travel. There was also some evidence that petitioner would cook meals and put the child to bed on nights when respondent was home. Additionally, the evidence adduced at the hearing, including text messages between the parties, demonstrated that the parties were each familiar with personal details relating to the other. Significantly, respondent testified that bringing petitioner into her home was both a business transaction and an act of friendship. Although the parties’ relationship certainly encompassed a business component, the parties’ preexisting friendship, together with the frequency of their interactions while living together, on both a personal level and with respect to the child, take their relationship out of the categories of “casual acquaintance” or “ordinary fraternization between two individuals in business” that are excluded from the statutory definition of “intimate relationship” (Family Ct Act § 812 [1] [e]; compare Matter of Leff v Ryan, 134 AD3d 939, 940 [2015]). Considering the personal and close nature of the parties’ relationship over a period of roughly six months, the frequency of their contact and the fact that respondent entrusted petitioner to act as a live-in nanny to her child, the evidence supports Family Court’s determination that the parties were in an “intimate relationship” (Family Ct Act § 812 [1] [e]; see Matter of Winston v Edwards-Clarke, 127 AD3d 771, 773 [2015]; compare Matter of Johnson v Carter, 122 AD3d 853, 854 [2014]; Matter of Welch v Lyman, 100 AD3d 642, 643-644 [2012]; Matter of Riedel v Vasquez, 88 AD3d at 726-727; Matter of Seye v Lamar, 72 AD3d 975, 977 [2010]). Accordingly, Family Court properly concluded that it had subject matter jurisdiction over this proceeding (see Matter of Winston v Edwards-Clarke, 127 AD3d at 773).
 

 We further uphold Family Court’s determinations that respondent committed the family offenses of menacing in the third degree and harassment in the second degree. “A person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury” (Penal Law § 120.15). Harassment in the second degree requires proof that an individual, “with intent to harass, annoy or alarm another person[,] . . . engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose” (Penal Law § 240.26 [3]). The intent required for both offenses may be inferred from the respondent’s actions or the surrounding circumstances (see Matter of Lynn TT. v Joseph O., 129 AD3d 1129, 1130 [2015]; Matter of Monay W., 33 AD3d 809, 810 [2006], lv denied 8 NY3d 803 [2007]; Matter of Marie K., 19 AD3d 149, 150 [2005]). The determination of whether the respondent has committed a family offense is a factual issue to be resolved by Family Court and, given its ability to observe and assess the witnesses’ testimony, its credibility determinations are afforded great weight on appeal (see Matter of James XX. v Tracey YY., 146 AD3d 1036, 1039 [2017]; Matter of Romena Q. v Edwin Q., 140 AD3d 1232, 1233 [2016]; Matter of Shana SS. v Jeremy TT., 111 AD3d 1090, 1091 [2013], lv denied 22 NY3d 862 [2014]).
 

 Petitioner testified that, on the evening of May 6, 2016, respondent became irate that her vacuum cleaner was not working well and, in her rage, threw it down some stairs. Petitioner stated that respondent then became upset with her about the condition of the home and, during a confrontation in the kitchen, threw a coffee mug in her direction. Petitioner testified that she avoided contact with the mug, which hit a door and broke, by moving to the side and that, had she not done so, it would have hit her in the face. According to petitioner, her encounter with respondent was an “intimidating situation.” Although respondent testified that she did not throw a mug at petitioner, Family Court expressly found that she was not a credible witness. According due deference to Family Court’s assessment of credibility (see Matter of Lynn TT. v Joseph O., 129 AD3d at 1131; Matter of Sharyn PP. v Richard QQ., 83 AD3d 1140, 1142 [2011]), we agree with Family Court that petitioner’s testimony established, by a preponderance of the evidence, that respondent committed the family offense of menacing in the third degree (see Penal Law § 120.15; Matter of King v King, 150 AD3d 1116, 1117 [2017]; cf. Matter of Marie K., 19 AD3d at 150).
 

 Petitioner further testified that, the following morning, on May 7, 2016, a caseworker from Child Protective Services came to respondent’s residence to inquire about an altercation that had reportedly occurred the prior evening. Petitioner stated that, after the caseworker left, respondent accused her of making the report and that she thereafter left respondent’s home. Petitioner testified that, in the days that followed, respondent sent her numerous unsettling text messages—which were admitted into evidence—accusing her of contacting Child Protective Services, stealing respondent’s old cell phone, Social Security card and checkbook, and impersonating respondent. In these text messages, which were sent from either respondent’s personal cell phone or business cell phone, respondent often denigrated petitioner and threatened that police officers were going to arrest her. In one message, respondent stated, “You are a filthy human being and the police will punish you just like they punished your mother.” Petitioner asserted that, although she did not ask respondent to stop sending her text messages, she contacted her phone company and requested that both respondent’s personal and business telephone numbers be blocked. According to petitioner, the allegations that respondent made against her were “inflammatory” and “despicable,” the threats of police involvement “were absolutely terrifying” and the content of the numerous text messages over a span of several days caused her to be “alarmed.” Considering the foregoing evidence, and deferring to Family Court’s credibility determinations, petitioner established, by a preponderance of the evidence, that respondent committed the family offense of harassment in the second degree (see Matter of Angelique QQ. v Thomas RR., 151 AD3d 1322, 1323-1324 [2017]; Matter of Marianna K. v David K., 145 AD3d 1361, 1362-1363 [2016]). Accordingly, we will not disturb Family Court’s determinations.
 

 To the extent that we have not addressed all of respondent’s arguments, they have been examined and found to be lacking in merit.
 

 Peters, P.J., Garry, Aarons and Pritzker, JJ., concur.
 

 Ordered that the order is affirmed, without costs.
 

 [1]
 

 . Although the order of protection from which respondent appeals expired by its own terms in October 2017, the appeal is not moot given “the ‘enduring legal and reputational consequences’ that may flow from a contested order of protection” (Matter of Rogers v Phillips, 138 AD3d 1183, 1183 n [2016], quoting Matter of Veronica P. v Radcliff A., 24 NY3d 668, 673 [2015]; see Matter of Elizabeth X. v Irving Y., 132 AD3d 1100, 1101 [2015]).
 

 [2]
 

 . The parties also disagreed as to whether their arrangement contemplated the payment of any additional compensation to petitioner; petitioner testified that it did, while respondent testified that it did not.