Matter of Carly W. v Mark V. (2024 NY Slip Op 01230)

Matter of Carly W. v Mark V.

2024 NY Slip Op 01230

Decided on March 7, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 7, 2024

CV-23-0408
[*1]In the Matter of Carly W., Respondent,
v
Mark ., Appellant. (And Another Related Proceeding.)

Calendar Date:January 19, 2024

Before:Egan Jr., J.P., Clark, Pritzker, Fisher and Powers, JJ.

Carl D. Birman, Albany, for appellant.
Todd G. Monahan, Schenectady, for respondent.

Egan Jr., J.P.
Appeal from an order of the Family Court of Schenectady County (Jill S. Polk, J.), entered January 31, 2023, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 8, finding respondent to have committed a family offense, and issued an order of protection.
Petitioner and respondent were in an intimate relationship that ended in March 2022, but they continued to live together in an apartment until May 2022. Petitioner commenced a family offense proceeding on April 6, 2022, alleging that respondent had been harassing her since their relationship ended and noting, in particular, an incident that had occurred that morning in which he tried to forcibly get her out of bed by pulling the bedsheets toward him. Family Court issued a temporary order of protection the same day directing respondent to, among other things, stay away from petitioner and their residence and refrain from communicating with her in any form. Petitioner commenced a second family offense proceeding in July 2022, alleging that respondent was continuing to harass her by, among other things, returning to the residence and repeatedly attempting to contact her via telephone calls, text messages and social media in violation of the temporary order of protection. Following a fact-finding hearing on the petitions, at which both parties testified, Family Court found that petitioner had proven, by a fair preponderance of the evidence, that respondent had committed the family offense of harassment in the second degree. Family Court proceeded to issue a one-year stay-away order of protection in favor of petitioner. Respondent appeals, and we affirm.
In these family offense proceedings, petitioner was obliged to prove by a fair preponderance of the evidence that respondent committed one of the family offenses set forth in Family Ct Act § 821 (1) (a) (see Matter of Stefanow v Stefanow, 214 AD3d 1215, 1216 [3d Dept 2023]; Matter of Pauline DD. v Dawn DD., 212 AD3d 1039, 1040 [3d Dept 2023], lv denied 39 NY3d 915 [2023]). Whether a family offense has been committed is a factual issue for Family Court to resolve, and we accord great weight to its assessments of witness credibility (see Matter of Stefanow v Stefanow, 214 AD3d at 1217). Family Court here determined that respondent had committed the family offense of harassment in the second degree, which occurs, in relevant part, when a person acts "with intent to harass, annoy or alarm another person" by "strik[ing], shov[ing], kick[ing] or otherwise subject[ing] such other person to physical contact, or attempt[ing] or threaten[ing] to do the same" (Penal Law § 240.26 [1]) or "engag[ing] in a course of conduct or repeatedly commit[ting] acts which alarm or seriously annoy such other person and which serve no legitimate purpose" (Penal Law § 240.26 [3]).
The first petition relates primarily to a sequence of events that began in the overnight hours of April 5 to 6, 2022. Petitioner testified as to how the parties [*2]continued to live together after she ended their romantic relationship in March 2022, and petitioner recounted how respondent had repeatedly, and unsuccessfully, tried to convince her to get back together in the following weeks. At about 10:00 p.m. on April 5, 2022, respondent entered her bedroom while she was trying to sleep and began "begging [her] to talk to him," becoming angry when she said no because she was getting up early in the morning and needed some rest. Respondent eventually left after hours of cajoling, but petitioner described how he returned around 2:30 a.m., screaming about her "sneaking around" on him with another man, ripping the blanket off of her on the bed and pulling her clothes out of the closet and throwing them on the floor. Petitioner related how respondent then unsuccessfully tried to grab her leg while she lay in bed and, screaming at her to "get out of [the] apartment," pulled the fitted bedsheet toward him in an effort to pull her off of the bed. Petitioner made clear in her testimony that she found respondent's conduct very threatening and that she was afraid that he was going to hurt her. She did not, however, call 911 until respondent again returned to her bedroom around 5:30 a.m. and threatened to commit suicide. The responding officers told the pair to separate for the day, and petitioner left to stay at a hotel. Later that day, she filed the first family offense petition and obtained a temporary order of protection against respondent.
Petitioner further testified as to what led to the second petition, which related to respondent's behavior after he was served with the temporary order of protection directing him to, among other things, refrain from communicating with her and stay away from their apartment. Petitioner testified that, shortly after respondent was served with the temporary order of protection on April 7, 2022, she began receiving numerous text messages and phone calls from spoofed phone numbers telling her that she was "a horrible person" and did not "know what [she] had done." She also described returning to her apartment on April 8, 2022 with two police officers and a maintenance person who was going to change the locks and how, upon entering, they found respondent asleep in petitioner's bed, which resulted in his arrest for violating the temporary order of protection. Petitioner further detailed how respondent continued to communicate with her over the ensuing weeks, most notably by direct messaging her about his suicidal thoughts from an Instagram account he had set up to showcase his cat.
Respondent, to be sure, disputed aspects of petitioner's account in his own testimony. For instance, although respondent admitted that he was upset and fighting with petitioner on April 5 through 6, 2022 and had pulled the sheets on her bed while she was lying in it, he denied trying to grab her or threatening to kill himself. Respondent further denied that he had called, texted or direct messaged petitioner [*3]after being served with the temporary order of protection, although even he acknowledged that he had text messaged her before being served with that order despite her having made clear that she did not want him to contact her. Respondent suggests that his behavior was "eccentric" and "irritating" rather than intentionally harassing. According deference to Family Court's assessment that petitioner's testimony was credible, however, we are satisfied that the credible proof readily permitted the inference that respondent acted with the requisite intent when he grabbed the bedsheets in an attempt to make physical contact with her and, moreover, engaged in a course of conduct toward her that had no legitimate purpose and had the effect of alarming and seriously annoying her (see Matter of Stefanow v Stefanow, 214 AD3d at 1217; Matter of Diane E. v Lynette E., 178 AD3d 1328, 1329 [3d Dept 2019]; Matter of Kristina L. v Elizabeth M., 156 AD3d 1162, 1166 [3d Dept 2017], lv denied 31 NY3d 901 [2018]).
"Turning lastly to [respondent's] claim of ineffective assistance of counsel, to successfully maintain an ineffective assistance of counsel claim, a party must demonstrate that he or she was deprived of meaningful representation as a result of his or her lawyer's deficiencies" (Matter of Jacklyn PP. v Jonathan QQ., 221 AD3d 1293, 1298 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]). Respondent complains that trial counsel failed to move to dismiss the petitions at the close of petitioner's case, but counsel cannot be faulted for failing to make a motion that — given the obligation of Family Court to accept petitioner's testimony "as true and afford [her] every favorable inference that could reasonably be drawn from that evidence" — stood little chance of success (Matter of Felix A. v Jennifer B., 209 AD3d 1131, 1132 [3d Dept 2022] [internal quotation marks and citations omitted]; see e.g. People v Caban, 5 NY3d 143, 152 [2005]). Further, the decision of trial counsel to forgo making an opening statement and a summation "is not necessarily indicative of ineffective legal representation" (People v Aiken, 45 NY2d 394, 400 [1978]; see Matter of Bennett v Abbey, 141 AD3d 882, 884 [3d Dept 2016]), and respondent offers little beyond speculation as to how that decision "impacted [his] ability to present a defense or . . . denied him a fair trial" (People v Miller, 13 AD3d 890, 892 [3d Dept 2004]). Our review of the record confirms, in fact, that counsel pursued a reasonable strategy of attempting to elicit testimony to undercut the portions of petitioner's account that were in dispute, raise the possibility of innocent explanations for some of respondent's conduct, and suggest that he had not acted with the requisite intent to harass, annoy or alarm her. As a result, "though the representation may not have been flawless, we cannot say it was not reasonably competent" so as to deprive respondent of meaningful representation (Matter of Putnam [*4]v Jenney, 168 AD3d 1155, 1158 [3d Dept 2019]; see Matter of Jacklyn PP. v Jonathan QQ., 221 AD3d at 1298-1299).
Clark, Pritzker, Fisher and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.