■ In the Matter of CARMELITA WILLIAMS, Appellant, v CITY OF NEW YORK, Respondent. WORKERS' COMPENSATION BOARD, Respondent. [887 NYS2d 286]—

Lahtinen, J. Appeal from a decision of the Workers' Compensation Board, filed August 7, 2008, as amended by decision filed June 5, 2009, which ruled, among other things, that claimant was not a participant in the World Trade Center rescue, recovery or cleanup operations and denied her claim for workers' compensation benefits.

Claimant was employed as an auditor with the New York City Department of Social Services and worked in lower Manhattan at 180 Water Street. Within a week of the terrorists' attacks on September 11, 2001, she returned to work at that location, but her job duties were temporarily changed. She had previously conducted internal audits of city vendors and agencies. However, she was reassigned to write checks that provided disaster funds to various individuals who had suffered immediate financial

impact from the attack. This involved face-to-face contact with individuals coming to her location to receive funds. She initially carried out this new assignment at the 180 Water Street location, but soon moved to another lower Manhattan building on Centre Street[1] because it was larger. Her hours were extended to include six to seven days a week and 10 to 12 hours per day. She remained in this special assignment until February 2002, and then returned to her normal duties. She continued working until September 2002, when she took a regular retirement with over 30 years of credited service.

Claimant allegedly began experiencing an exacerbation of her respiratory condition while working on the special assignment. She subsequently filed four claims for workers' compensation benefits between December 2005 and June 2007. In October 2006 and May 2007, she submitted forms registering as a participant in the World Trade Center rescue, recovery and cleanup so as to be entitled to the provisions of the recently enacted Workers' Compensation Law article 8-A (see L 2006, ch 446, as amended). A Workers' Compensation Law Judge found that claimant had been involved in rescue, recovery and cleanup and, thus, her claim was protected by Workers' Compensation Law article 8-A from dismissal for being untimely (see Workers' Compensation Law § 28). Upon review, the Workers' Compensation Board determined that claimant's activity did not constitute rescue, recovery and cleanup within the meaning of Workers' Compensation Law § 161 (1) and, accordingly, disallowed her claim as untimely.[2] Claimant appeals.

Workers' Compensation Law article 8-A was enacted "to remove statutory obstacles to timely claims filing and notice for latent conditions resulting from hazardous exposure for those who worked in rescue, recovery or cleanup operations following the World Trade Center September 11th, 2001 attack" (Senate Mem in Support, 2006 McKinney's Session Laws of NY, at 1915; see Minkowitz, Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law, art 8-A, at 488). It is undisputed that this legislation was intended to be liberally construed to provide a potential avenue of relief for workers and volunteers suffering ill health as a result of their efforts in

---

1. There is some confusion in the record as to where on Centre Street the building was located, but it is undisputed that the building was within the area defined as the "World Trade Center site" by Workers' Compensation Law § 161 (2). Claimant also worked briefly at a temporary site on pier 94, which her supervisor testified was located near 50th Street and, thus, outside the statutorily defined "World Trade Center site."

2. Although this decision was amended by decision dated June 5, 2009, the Board's conclusion remained the same.

the aftermath of the terrorists' attacks. The liberal intent of the statute is reflected by the fact that the Legislature has amended the law twice to extend the deadline for claimants to file for coverage (*see* L 2008, ch 489, § 18; L 2007, ch 199, § 1; *see generally Matter of Smith v Tompkins County Courthouse*, 60 NY2d 939, 941 [1983] [stating the general rule that the Workers' Compensation Law is to be liberally construed]).

To qualify for the coverage afforded by the statute, a claimant must essentially establish three elements, which relate to time, location and activity. The first two elements are clearly defined by the statute. The time element is limited to relevant activity occurring between September 11, 2001 and September 12, 2002 (*see* Workers' Compensation Law § 161 [1] [i]-[iv]). The locations are specifically spelled out in the statute and include, as pertinent here, the "World Trade Center site" (*see* Workers' Compensation Law § 161 [1] [i]), which "means anywhere below a line starting from the Hudson River and Canal Street; east on Canal Street to Pike Street; south on Pike Street to the East River; and extending to the lower tip of Manhattan" (Workers' Compensation Law § 161 [2]). The qualifying activity that a person must show if his or her location was the World Trade Center site is that he or she "participated in the rescue, recovery, or cleanup operations" (Workers' Compensation Law § 161 [1] [i]).[3] This language, which is susceptible to varying interpretation and application, is the focus of the current appeal.

Claimant contends that the Board construed the qualifying activity in the statute too narrowly and focused unduly in her case on the word "rescue" rather than "recovery." Under well-established rules of statutory construction, each word of a statute is to be given effect (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 231; *see also Matter of SIN, Inc. v Department of Fin. of City of N.Y.*, 71 NY2d 616, 621-622 [1988]). While the three terms (rescue, recovery, cleanup) will often overlap in the context of postattack activity at the World Trade Center site, nevertheless, in a situation where a participant's activity falls within only one of the terms, he or she would still be covered by the statute. Since the word recovery is not separately defined in the statute and had not been construed prior to enactment of the statute to have a "technical or peculiar significance," the word should "be interpreted according to the meaning . . . generally accepted at the time of enactment" (McKinney's Cons Laws of NY, Book 1, Statutes § 232).

The term recovery in the context of the aftermath of the ter-

---

**3.** This definition in paragraph (i) merely repeats the words from subdivision (1) that it purports to define.

rorist attacks certainly could have different meanings to different people. Each individual who returned to lower Manhattan in the days and months after the attacks—to work at a job not associated with rescue and cleanup, to live, to purchase a product, to buy lunch, to visit, to mourn, to encourage—contributed, in an expansive sense of the term, to the "recovery." Although the legislation is construed liberally, such an expansive interpretation of recovery was not intended. It is apparent that the Legislature realized this element of the statute would, in many circumstances, be fact-driven and a difficult determination.[4] The Board is often accorded broad discretion when addressing similar factual determinations that have legal import under the Workers' Compensation Law (*see e.g. Matter of Early v New York Tel. Co.*, 57 AD3d 1341, 1343 [2008] [whether case truly closed]; *Matter of Victor v Steel Style, Inc.*, 56 AD3d 1099, 1099 [2008] [status as special employee]; *Matter of Jara v SMJ Envtl., Inc.*, 55 AD3d 1157, 1158 [2008] [existence of employment relationship]; *Matter of Grant v Niagara Mohawk Power Co.*, 53 AD3d 972, 973 [2008] [voluntary withdrawal from labor market]).[5] It has decided cases favorably to claimants that can be characterized as basically recovery cases including, among others, a technician who worked installing and repairing telephone lines in the relevant area of lower Manhattan (*see Verizon NY, Inc.*, 2008 WL 2878810, 2008 NY Wrk Comp LEXIS 7135 [July 15, 2008]), a bus driver assigned to transport police and firefighters from the staging area to ground zero (*see New York City Tr. Auth.*, 2009 WL 525476, 2009 NY Wrk Comp LEXIS 5438 [Feb. 20, 2009]), and a mechanic assigned to help restore gas lines in the vicinity (*see Con Edison*, 2008 WL 593651, 2008 NY Wrk Comp LEXIS 1247 [Feb. 12, 2008]). So long as the Board's construction and application of the statutory words (rescue, recovery, cleanup) is consistent with the general accepted meaning of such terms, and the underlying factual basis for making its determination is supported by substantial evidence, its determination will be upheld.

Here, the Board's original decision and amended decision

---

**4.** All the elements of the statute necessarily entail difficult line-drawing that leaves some without a potential recovery. A person working one block north of Canal Street who developed respiratory problems would not qualify and undoubtedly would consider the use of Canal Street as the boundary to be unjust and arbitrary. Similarly, the time element draws an outside line on a particular date and a person working one day thereafter would not qualify while a person working a mere day earlier would.

**5.** The breadth of discretion under the statute is illustrated by, among other things, the fact that whether a person is a volunteer is decided "upon presentation to the board of evidence satisfactory to the board" (Workers' Compensation Law § 161 [1]).

repeatedly referred to claimant as not participating in "rescue" activity. In both decisions the Board cited, discussed and relied on two of its prior decisions that dealt with rescue from the World Trade Center buildings on the date of the attacks. In its original decision, the Board expressly relied upon its conclusion that claimant's "work was not a rescue-type activity" in finding the statute inapplicable. Although this comment was omitted from the amended decision (which was not filed until 10 months later and after all briefs in this appeal had been filed), neither decision discussed recovery, despite the fact that this was the relevant activity in this case.[6]

This is not to suggest that the Board must always address each activity (rescue, recovery, cleanup) separately or that it cannot group the terms in its decision. However, repeatedly referring to and ostensibly premising a decision on an activity that is not germane, with no analysis of the pertinent activity, does not permit meaningful judicial review (*see Matter of Cucci v Rexer's Tang Soo Do Karate Academy*, 34 AD3d 887, 889 [2006]; *Matter of Caldas v 86 Alda Rest.*, 167 AD2d 594, 595 [1990]). Under the circumstances, we reverse and remit to the Board so that the relevant issue can be addressed (*see Matter of Cucci v Rexer's Tang Soo Do Karate Academy*, 34 AD3d at 889).

Cardona, P.J., Peters, Malone Jr. and Stein, JJ., concur. Ordered that the decision is reversed, with costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.

---

**6.** We further note that the Board's original decision incorrectly stated a material fact by concluding that claimant's duties before her special assignment "were the very same duties she performed subsequent to the terrorist attack." While this finding was omitted from the amended decision, no pertinent analysis of claimant's actual duties was substituted.