OPINION OF THE COURT
Egan Jr., J.
On the morning of September 11, 2001, claimant, a former emergency medical technician, started walking from his residence on the upper west side of Manhattan toward the World Trade Center site to offer assistance in the rescue and recovery efforts. While en route, claimant heard that a triage center was being established at the Chelsea Piers and he proceeded to that location, where he spent the day sorting supplies and setting up a treatment area. The following day, claimant went to ground zero, found his way around the barriers, flashed his emergency medical technician card and badge to gain access to the site and attempted to search for survivors. Claimant was not registered or affiliated with any volunteer organization or agency during the course of these two days, and he did not aid in the rescue or recovery operations after September 12, 2001.
In March 2010, claimant registered his participation as a volunteer in the World Trade Center rescue, recovery and/or cleanup operations with the Workers’ Compensation Board (see Workers’ Compensation Law § 162) and thereafter filed this claim for workers’ compensation benefits for injuries allegedly sustained as a result of his exposure to dust and toxins at the sites in question. Following various proceedings, a Workers’ Compensation Law Judge (hereinafter WCLJ) found that claimant sustained a compensable injury for gastroesophageal reflux disease, depression, anxiety, chronic rhinitis and sinusitis and awarded benefits. The World Trade Center Volunteer Fund sought review of the WCLJ’s decision, contending that claimant failed to meet the definition of “volunteer” because he did not provide proof that he was acting under the direction and control of a volunteer agency. In rebuttal, claimant argued, among other things, that the case also should have been established for asthma. The Board reversed the WCLJ’s decision, finding that claimant did not meet the definition of “first response emer *84 gency services personnel” as set forth in the final revised Order of the Chair No. 967 issued by the Board’s chair in 2006 and, hence, did not qualify as a volunteer. This appeal by claimant ensued.
Workers’ Compensation Law article 8-A, which is to be afforded a liberal construction, “was enacted ‘to remove statutory obstacles to timely claims filing and notice for latent conditions resulting from hazardous exposure for those who worked in rescue, recovery or cleanup operations following the World Trade Center September 11th, 2001 attack’ ” (Matter of Williams v City of New York, 66 AD3d 1203, 1204 [2009], quoting Senate Mem in Support, 2006 McKinney’s Session Laws of NY at 1915). A “volunteer” may qualify for coverage under the statute provided he or she tenders to the Board satisfactory evidence that he or she participated in the rescue, recovery, or cleanup operations at the World Trade Center site (see Workers’ Compensation Law § 161 [1] [b] [i]) — a geographical location defined by Workers’ Compensation Law § 161 (2) — between September 11, 2001 and September 12, 2002 and suffers from a “[qualifying condition,” including rhinitis and sinusitis (see Workers’ Compensation Law § 161 [3] [a]), gastroesophageal reflux disease (see Workers’ Compensation Law § 161 [3] [c]) and anxiety or depression (see Workers’ Compensation Law § 161 [3] [d]). Here, the Board did not directly address the time, location and activity elements of the statute; rather, the Board denied claimant’s application for workers’ compensation benefits solely because claimant “did not [serve] under the direction of an authorized rescue entity or volunteer agency” and, hence, “[did] not meet the definition of [a] volunteer” within the meaning of Workers’ Compensation Law article 8-A.
“It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature. The starting point is always to look to the language itself and where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning” (Matter of Joyce [Coface N. Am. Ins. Co.—Commissioner of Labor], 116 AD3d 1132, 1133 [2014] [internal quotation marks and citations omitted]; see Matter of Talisman Energy USA, Inc. v New York State Dept. of Envtl. Conservation, 113 AD3d 902, 904 [2014]), as “the text of a provision is the clearest indicator of the enactors’ intent” (Nostrom v A.W. Chesterton Co., 15 NY3d 502, 507 [2010]). Here, Workers’ Compensation Law § 161 does not define the term volunteer, and Workers’ Compensation Law article 8-A is otherwise silent *85 in this regard. Affording such term its plain and ordinary meaning (see McKinney’s Cons Laws of NY, Book 1, Statutes § 232), a volunteer is defined as, among other things, “a person who performs a service willingly and without pay” (Dictionary.com, http://dictionary.reference.com/browse/volunteer?s=t [accessed May 12, 2014]). Noticeably absent from both Workers’ Compensation Law article 8-A and the commonly understood meaning of the word volunteer is any requirement that such individual “serve under the direction of an authorized rescue entity or volunteer agency.” Accordingly, the Board’s imposition of such a requirement is, to our analysis, contrary to the plain terms of the statute.
Moreover, our conclusion in this regard is fully supported by the underlying legislative history. Following September 11, 2001, the House of Representatives appropriated various funds to, insofar as is relevant here, assist the Board in processing claims related to the terrorist attack. To that end, $25,000,000 was allocated to the Uninsured Employers Fund “for reimbursement of claims related to the first response emergency services personnel who were injured, were disabled, or died due to the terrorist attacks” (Department of Defense and Emergency Supplemental Appropriations for Recovery From and Response to the Terrorist Attacks on the United States Act, 2002, as added by Pub L 107-117, 115 Stat 2230, 2313 [107th Cong, 1st Sess, Jan. 10, 2002]). In the absence of contemporaneous enabling legislation, the Board issued Order of the Chair No. 967 in June 2003, which defined the term “first response emergency services personnel” as:
“[a] 11 persons who, serving without compensation or remuneration, and serving under the direction of an authorized rescue entity or volunteer agency, provided services to deal with the emergency situation created by the September 11, 2001 terrorist attack on the World Trade Center, including but not limited to firefighting, rescue, emergency medical, health and sanitation services, emergency debris clearance, care and shelter of those made homeless, distribution of food, water, and medical supplies and other equipment.”[1]
*86 Thereafter, the Board routinely applied this definition of volunteer to deny awards to claimants who were not associated with an authorized rescue entity or volunteer agency (see e.g. Employer: WTC Volunteer, 2006 WL 196769, 2006 NY Wrk Comp LEXIS 319 [WCB No. 0045 1670, Jan. 11, 2006]; Employer: WTC Volunteer, 2005 WL 3029277, 2005 NY Wrk Comp LEXIS 9568 [WCB No. 0044 7096, Nov. 1, 2005]).
Thereafter, in August 2006, the Legislature enacted Workers’ Compensation Law article 8-A (see L 2006, ch 446; Senate Mem in Support, 2006 McKinney’s Session Laws of NY at 1914). In response, a final revised Order of the Chair No. 967 was issued, which, although acknowledging this legislative enactment, nonetheless retained the requirement that a volunteer be affiliated with an authorized rescue entity or volunteer agency in order to qualify for benefits — a requirement that the Board has continued to impose in its subsequent decisions (see e.g. Employer: WTC Volunteer, 2013 WL 5959058, 2013 NY Wrk Comp LEXIS 10020 [WCB No. G038 2498, Oct. 29, 2013]; Employer: WTC Volunteer, 2009 WL 1392412, 2009 NY Wrk Comp LEXIS 9211 [WCB No. 0080 3691, May 8, 2009]). The flaw in the Board’s analysis on this point is that, prior to the enactment of Workers’ Compensation Law article 8-A, several bills were circulated in the Legislature that defined a “volunteer rescue worker” as one who “rendered service under the direction and control of an authorized rescue entity” (2003-2004 NY Senate Bill S04693; 2003-2004 NY Assembly Bill A08844; 2001-2002 NY Assembly Bill A09482). Significantly, however, such language is not included in Workers’ Compensation Law article 8-A, and “[t]he deletion of this explicit language from the version of [Workers’ Compensation Law article 8-A] that finally passed is persuasive evidence that the Legislature rejected” the more restrictive definition of volunteer that originally was proposed (Majewski v Broadalbin-Perth Cent. School Dist., 231 AD2d 102, 107 [1997], affd 91 NY2d 577 [1998]; see generally Matter of Jessica D. v Jeremy H., 77 AD3d 87, 89-91 [2010]).
Finally, to the extent that the Board has consistently relied upon the subject orders in denying benefits to volunteers who were not affiliated with an authorized rescue entity or volunteer association, we need note only that while Workers’ Compensation Law § 141 vests the Board’s chair with certain powers to administer the provisions of the Workers’ Compensa *87 tion Law, it does not vest him or her with the authority to supplement or amend duly enacted legislation. Accordingly, whatever the net effect of such orders may be, they “cannot overrule the statute itself” (Matter of Russomanno v Leon Decorating Co., 306 NY 521, 525 [1954]). In sum, as neither the statutory language nor the legislative history supports the Board’s requirement that an individual be affiliated with an authorized rescue entity or volunteer agency in order to qualify as a volunteer - and, hence, be eligible for the coverage afforded under the statute, the Board’s decision denying claimant’s application for benefits upon this particular ground cannot stand.[2] That said, claimant still must satisfy the time, location and activity elements of Workers’ Compensation Law article 8-A in order to be entitled to benefits, and we therefore remit this matter to the Board for consideration of those issues and, more to the point, the sufficiency of claimant’s proof thereon.
Lahtinen, J.E, McCarthy, Rose and Lynch, JJ., concur.
Ordered that the decision is reversed, without costs, and matter remitted to the Workers’ Compensation Board for further proceedings not inconsistent with this Court’s decision.

. A revised order — issued in July 2003 — contained the same definition of “first response emergency services personnel,” and both the original and *86 revised order also defined what constituted an “authorized rescue entity or authorized volunteer agency.”

. To the extent that it may be argued that the imposition of such a requirement is necessary in order to guard against frivolous claims, the remedy lies with the Legislature in the form of a statutory amendment.