Matter of Kearns v Decisions Strategies Envt. (2018 NY Slip Op 08599)





Matter of Kearns v Decisions Strategies Envt.


2018 NY Slip Op 08599


Decided on December 13, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 13, 2018

526403

[*1]In the Matter of PETER KEARNS, Appellant,
v
DECISIONS STRATEGIES ENVIRONMENT et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: November 19, 2018

Before: McCarthy, J.P., Egan Jr., Lynch, Devine and Clark, JJ.


Persaud & Zeltmann, Massapequa (Sharmine Persaud of counsel), for appellant.
Goldberg Segalla, LLP, Buffalo (Cory A. DeCresenza of counsel), for Decisions Strategies Environment and another, respondents.



MEMORANDUM AND ORDER
McCarthy, J.P.
Appeal from a decision of the Workers' Compensation Board, filed June 19, 2017, which ruled, among other things, that claimant was not a participant in the World Trade Center rescue, recovery or cleanup operations and denied his claim for workers' compensation benefits.
Following the September 11, 2001 terrorist attacks on the World Trade Center, claimant, an ironworker by trade, was hired by Confidential Investigations and Consultants (hereinafter CIC) to monitor and record trucks coming into and leaving the disaster site. Claimant began this work in late September or early October 2001 and continued until December 2001. Decisions Strategies Environment, a general contractor at the site, had hired CIC as a subcontractor to monitor the truck traffic hauling debris from the site. In 2013, claimant filed an employee claim (a C-3 form) for workers' compensation benefits for injuries allegedly sustained as a result of exposure to toxic debris at the site, including emphysema, chronic bronchitis, asthma and chronic obstructive pulmonary disease. In 2014, claimant filed a registration of his participation in the World Trade Center rescue, recovery and cleanup operations with the Workers' Compensation Board (see Workers' Compensation Law § 162). Following hearings, a Workers' Compensation Law Judge found, among other things, that claimant's activities were covered by Workers' Compensation Law article 8-A and established a claim for chronic obstructive pulmonary disease, gastroesophageal reflux disease and sleep apnea syndrome. On appeal by Decisions Strategies, the Workers' Compensation Board reversed, finding that the claim was untimely under Workers' Compensation Law § 28 and that claimant's job activities monitoring trucks were not covered by Workers' Compensation Law article 8-A as he was not a [*2]participant involved in "rescue, recovery, or cleanup operations" within the meaning of Workers' Compensation Law § 161 (1). This appeal by claimant ensued.
We affirm. Substantial evidence supports the Board's determination that claimant's employment activities at this site did not constitute participation in the "rescue, recovery, or cleanup operations" (Workers' Compensation Law § 161 [1]) so as to be covered by Workers' Compensation Law article 8-A. As relevant here, Workers' Compensation Law § 161 provides that the phrase "'[p]articipant in World Trade Center rescue, recovery, or cleanup operations' means any . . . employee who within the course of employment . . . participated in the rescue, recovery, or cleanup operations at the World Trade Center site between September [11, 2001] and September [12, 2002]" (Workers' Compensation Law § 161 [1] [a] [i]). "So long as the Board's construction and application of the statutory words (rescue, recovery, cleanup) is consistent with the generally accepted meaning of such terms, and the underlying factual basis for making its determination is supported by substantial evidence, its determination will be upheld" (Matter of Regan v City of Hornell Police Dept., 124 AD3d 994, 996 [2015] [internal quotation marks, brackets and citation omitted]).
"Generally, the Board requires that the claimant directly participate in or otherwise have some tangible connection to the rescue, recovery or cleanup operations" (id. [internal quotation marks and citation omitted]). The claim described claimant's job as "checking trucks hauling debris away," and he testified that his job consisted of logging trucks in as they passed him on their way into the site and, after they filled up, he logged them out as they left the site. He testified that CIC was "making sure they weren't taking anything they weren't supposed to take," but did not indicate that he actually inspected the contents of the trucks and described that his job was "to take the information down" regarding the truck number and driver as they passed him. Likewise, CIC's president testified that claimant was hired "to monitor the coming and going of trucks and to write down the [numbers on the] trucks as they came from the site to the location where [claimant] was posted" as the trucks hauled the debris away. Claimant was not involved with debris removal or loading and unloading the trucks. There was no testimony that claimant directly aided or supported the drivers or first responders or that he engaged in the recovery or rescue in any respect, nor that he directly engaged in any cleanup activity or transport of people or materials, nor that he controlled who had access to the site (compare id.).
Notwithstanding the liberal construction afforded to this remedial statute (see id. at 995; Matter of Williams v City of New York, 89 AD3d 1182, 1183 [2011], lv denied 18 NY3d 807 [2012]) and given the lack of any statutory definition of the term "cleanup" (Workers' Compensation Law § 161 [1]), we find that the Board's construction of that term as excluding routine monitoring of truck traffic is consistent with its accepted meaning and that the Board's determination is supported by substantial evidence (see Matter of Regan v City of Hornell Police Dept., 124 AD3d at 996). Recognizing that application of this statute "necessarily entail[s] difficult line-drawing that leaves some without a potential recovery" (Matter of Williams v City of New York, 66 AD3d 1203, 1206 n 4 [2009]), we cannot conclude that the Board abused its discretion in finding that claimant's job duties did not have a direct or tangible connection to the cleanup operations at the site and, thus, that Workers' Compensation Law article 8-A does not apply to his claim. We further note that the Board rationally determined that claimant's activities monitoring and recording trucks were more akin to "routine security work," which the Board has previously found does not constitute participation in rescue, recovery or cleanup operations (see Employer: Summit Security Servs., 2009 WL 2455623, 2009 NY Wrk Comp LEXIS 12244 [WCB No. 0082 0031, July 30, 2009]).
Finally, despite claimant's arguments, the Board did not determine that he was a volunteer within the meaning of Workers' Compensation Law § 161 (1) (b). Rather, the Board noted that, by filing a C-3 claim form, claimant had pursued his claim as an employee. Recognizing that claimant's registration of participation in World Trade Center rescue, recovery and cleanup operations indicated that he had initially worked as a volunteer at the site, and his testimony that he began working at the site on the "bucket brigade" removing debris on [*3]September 11, 2001, weeks before he was hired to monitor trucks, the Board merely noted that its decision did not preclude him from pursuing a claim as a volunteer. Given the foregoing, the parties' remaining arguments need not be addressed.
Egan Jr., Lynch, Devine and Clark, JJ., concur.
ORDERED that the decision is affirmed, without costs.