Matter of Goss v WTC Volunteer (2025 NY Slip Op 01413)

Matter of Goss v WTC Volunteer

2025 NY Slip Op 01413

Decided on March 13, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 13, 2025

CV-23-2160 CV-24-0333
[*1]In the Matter of the Claim of Cynthia Goss, Appellant,
v
WTC Volunteer et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:February 20, 2025

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and McShan, JJ.

Law Firm of Alex Dell, PLLC, Albany (Sarah M. Bennett of counsel), for appellant.

Garry, P.J.
Appeals (1) from a decision of the Workers' Compensation Board, filed October 11, 2023, which ruled, among other things, that claimant was not a participant in the World Trade Center rescue, recovery and cleanup operations and denied her claim for workers' compensation benefits, and (2) from a decision of said Board, filed January 26, 2024, which denied claimant's application for reconsideration and/or full Board review.
Claimant, a crisis response services provider, was retained to provide such services to first responders to the September 11, 2001 terrorist attacks on the World Trade Center (hereinafter WTC). She initially provided crisis response services September 12, 2001 through September 22, 2001. Claimant was paid for her services during that time and mainly worked at a command center set up by her employer at a hotel near the WTC site. After her paid assignment ended, claimant was contacted by John McArdle, the on-scene coordinator for rescue and recovery for the New York Police Department (hereinafter NYPD) at the WTC site. McArdle requested that claimant return to the WTC site and continue providing services to the members of the police and fire department that were assigned to the rescue, recovery and cleanup operations at the site. Claimant returned and worked, as a volunteer, at the WTC site for 10 days in October 2001 and 10 days in December 2001.
In 2018, claimant filed a claim for workers' compensation benefits for injuries sustained due to exposure to toxins at the WTC site. Following an initial hearing on the limited issue of carrier liability under Workers' Compensation Law §§ 166 and 167, a Workers' Compensation Law Judge (hereinafter WCLJ) determined that claimant was a volunteer during her October 2001 and December 2001 engagements and that the Uninsured Employers Fund (hereinafter UEF) would be the liable carrier if claimant could establish her entitlement to workers' compensation benefits. Following additional hearings, the WCLJ found, among other things, that claimant's activities were covered by Workers' Compensation Law article 8-A and established the claim for sarcoidosis. By decision filed October 11, 2023, the Workers' Compensation Board reversed the WCLJ's finding, concluding, among other things, that claimant's activities were not covered by Workers' Compensation Law article 8-A because she was not a participant in the WTC rescue, recovery and cleanup operations and disallowed the claim.[FN1] By decision filed January 26, 2024, the Board denied claimant's application for reconsideration and/or full Board review. Claimant appeals.
"Workers' Compensation Law article 8-A was enacted to remove statutory obstacles to timely claims filing and notice for latent conditions resulting from hazardous exposure for those who worked in rescue, recovery or cleanup operations following the WTC September 11th, 2001 attack" (Matter of Liotta v New York State Unified Ct. Sys., 226 AD3d 1277, 1278 [3d Dept 2024] [internal quotation marks[*2], brackets and citations omitted]). "It is undisputed that this legislation was intended to be liberally construed to provide a potential avenue of relief for workers and volunteers suffering ill health as a result of their efforts in the aftermath of the terrorists' attacks" (Matter of Williams v City of New York, 66 AD3d 1203, 1204-1205 [3d Dept 2009]; see Matter of Regan v City of Hornell Police Dept., 124 AD3d 994, 995 [3d Dept 2015]). "Consistent with the Legislature's stated desire to achieve some measure of parity among different categories of workers exposed to the same environmental hazards, the Board has required that the injured claimant directly participate in or otherwise have some tangible connection to the rescue, recovery or cleanup operations in order to fall within the coverage of Workers' Compensation Law article 8-A" (Matter of Williams v City of New York, 89 AD3d 1182, 1184 [3d Dept 2011] [citations omitted], lv denied 18 NY3d 807 [2012]; see Matter of Bodisch v New York State Police, 195 AD3d 1274, 1276 [3d Dept 2021]).[FN2] However, in order for its determination to be upheld, the Board's underlying factual basis must be supported by substantial evidence (see Matter of Kearns v Decisions Strategies Envt., 167 AD3d 1197, 1199 [3d Dept 2018]; Matter of Regan v City of Hornell Police Dept., 124 AD3d at 995-996).
Here, claimant testified that, during her October 2001 and December 2001 assignments, she was assigned to the NYPD's command center for the rescue, recovery and cleanup operations. The command center was located 600 feet from the WTC site and there were areas set up at the command center for claimant and others to provide mental health support to police and fire department personnel working on the rescue, recovery and cleanup operations at the site. According to claimant, she would respond to calls concerning distressed workers and those individuals would be brought to the command center or claimant would go the rubble pile where they were working. Claimant would do an assessment as to the extent of the individual's mental health condition and determine whether the individual could continue working or be taken off line and provided mental health treatment through the NYPD employee assistance program. McArdle testified that he remembered claimant being at the command center and providing support to those working in the rescue, recovery and cleanup operation and that she was "well received" by the NYPD. McArdle further testified that identifying those individuals who needed to be taken off line for treatment was instrumental in continuing the operation and that many of those individuals were able to return to the operation after treatment. In light of the foregoing connection to the rescue, recovery and cleanup operations, and given the liberal construction afforded the remedial statute, the Board's determination that claimant did not participate in the rescue, recovery and cleanup operations under Workers' Compensation Law [*3]article 8-A is not supported by substantial evidence (see Matter of Liotta v New York State Unified Ct. Sys., 226 AD3d at 1280; Matter of Bodisch v New York State Police, 195 AD3d at 1277). As such, we reverse the decisions and remit the matter to the Board for further proceedings.
Lynch, Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ORDERED that the decisions are reversed, without costs, and matter remitted to the Worker's Compensation Board for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: In reaching this decision, the Board rejected UEF's challenge to claimant's status as a volunteer, finding that the issue was previously decided by an earlier WCLJ decision and that UEF had raised no objection.

Footnote 2: As relevant here, a " '[p]articipant in [WTC] rescue, recovery, or cleanup operations' " is defined as "any (a) employee who within the course of employment, or (b) volunteer" who "participated in the rescue, recovery, or cleanup operations at the [WTC] site between September [11, 2001] and September [12, 2002]" (Workers' Compensation Law § 161 [1]).